## MIDDLESEX COUNTY.

### John A. Conlin *vs.* Samuel N. Aldrich & others.

Mandamus lies to enforce the right of a member of a school committee to act as a member of the board to the exclusion of a person whom the other members wrongfully recognize and permit to act in his stead.

The provision in the Gen. Sts. *c.* 7, § 3, that polls shall not be kept open after sunset does not apply to the choice of town officers.

Mandamus on the petition of John A. Conlin. The first writ, issued April 24, 1867, was addressed to Samuel N. Aldrich and William A. Start, as members of the school committee of the town of Marlborough, and to William A. Burditt, and required the two former to permit the petitioner to act as a member of the committee, and the latter to refrain from acting as such ; or to show cause to the contrary. To this the respondents made return ; and at the hearing before *Chapman,* J., these facts appeared :

At the annual town meeting in Marlborough held on April 1, 1867, Conlin was chosen a member of the school committee of the town for the term of three years ; but the polls were opened and the election was made after sunset. The meeting was adjourned to April 8, when this election was treated as invalid, and Burditt was elected to the same office as if it were vacant. In the return of Burditt to the writ it was alleged that at this adjourned meeting " 845 legal voters were present out of the 1075 voters of said town," and that " he received every vote cast but one." The town clerk gave to Conlin a certificate of his election ; but Aldrich and Start, who were the two other members of the committee, refused to recognize him as their associate or permit him to act as such, and permitted Burditt so to act.

The question whether the election of the petitioner, made after sunset, was valid, was reserved for the consideration of the full court.

*J. G. Abbott & J. D. Fallon,* for the petitioner, to the point that mandamus, and not *quo warranto,* is the appropriate remedy for the petitioner, argued that the latter process would reach

one of the respondents only, not the two members of the committee who are conceded to have been legally elected and are a majority of the board. The school committee are by statute " a board " who act by vote of the majority, must appoint a secretary, and keep a record of their proceedings. Gen. Sts. *c.* 38, §§ 16, 22. To make vacant by *quo warranto* the place of an intruder in the board would not effect the admission of the petitioner. *Strong, petitioner,* 20 Pick. 484. Under process of mandamus, all the rights of all parties interested can be settled; and judgment against all can be enforced without subjecting the petitioner to the burden of two proceedings to obtain his rights *Howard* v. *Gage,* 6 Mass. 462. *Strong, petitioner,* 20 Pick. 495 *First Parish in Sudbury* v. *Stearns,* 21 Pick. 155, 156. *Dew* v. *Judges,* 3 Hen. & Munf. 1. 6 Dane Ab. 335. *Nourse* v. *Meriam,* 8 Cush. 11.

*T. H. Sweetser & W. B. Gale,* for the respondents.

HOAR, J. It is not very strongly contested by the respondents that the appropriate remedy for the petitioner, if he is entitled to any relief, is the writ of mandamus. That point is substantially settled by the case of *Strong, petitioner,* 20 Pick. 484. And, as we understand that the only purpose or wish of the parties to the controversy is to obtain a decision of this court on the construction of the statute upon which the petitioner's rights depend, there is no reason to doubt that the whole question at issue may be substantially disposed of by this proceeding.

The only question reserved for the consideration of the court is, whether the petitioner was legally chosen a member of the school committee of the town of Marlborough at a meeting held on the first day of April 1867, the polls having been opened and the election made after sunset on that day; and the court are all of opinion that the election was regular and valid.

The prohibition of keeping the polls open after sunset is first contained in the St. of 1839, *c.* 42, a statute which, by *c.* 165 of the same year, was confined in its application to towns, and was not to apply to cities. That statute related only to elections of national and state officers, and was repealed by the St. of 1843 *c.* 94. The next provision upon the subject is found in the Gen

Sts. *c.* 7, § 3. It was not contained in the report of the commissioners on the revision of the statutes, but was inserted as an amendment by the legislature.

The first section of chapter 7 provides that no meeting for the election of national, state, district, city or town officers shall be held on a day upon which the militia are by law required to do military duty. Section 2 provides that " meetings for the election of national, state, district, and county officers may be opened as early as nine o'clock in the forenoon, and shall be opened as early as two o'clock in the afternoon." Section 3 is as follows : " Such meetings in towns shall be called by the selectmen in the manner ordered by the towns, and in cities according to the provisions of the acts establishing them and the acts in addition thereto ; and the warrant for notifying such meetings shall specify the time when the polls for the choice of the several officers shall be opened, and the same shall be kept open at least two hours, and in towns for such longer time as a majority of the voters present shall by vote direct ; but in no case shall the polls be kept open after the hour of sunset."

The natural and grammatical reference of the phrase " such meetings " in the last section, would be to the meetings named in the next preceding section, and would therefore not include meetings held for the election of town officers. " The warrant for notifying such meetings shall specify the time when the polls for the choice of the several officers shall be opened, and the same shall be kept open at least two hours ; " obviously meaning " the polls " at such meetings as the section refers to. " The polls " referred to in the last clause, we can have no doubt, are " the polls " before mentioned in the section.

But beside the literal import of the statute, the nature of the provision is such that we cannot suppose the legislature intended it to apply to the choice of town officers. There is no limitation in the statute of the hour at which meetings for the choice of town officers shall be held. The officers to be chosen are numerous, and are usually chosen in succession. They are not all required to be chosen by ballot, but, with some exceptions, may be chosen in such manne  as the town may determine at

the meeting. It is not an infrequent occurrence that persons first chosen refuse to accept the office, making it necessary to choose others. It would therefore be highly inconvenient, if not impracticable, to specify in the warrant the time at which the polls for the choice of each officer would be opened, and needless to have them remain open two hours. But if the other provisions in § 3 do not apply to the choice of town officers, it would be strange if the provision relating to sunset, which is a part of the same sentence, and apparently merely qualifying what had gone before, should have a more extensive application. And further than this, we can hardly suppose that a restriction on the powers and usages of towns, which had never before had a place in the legislation of the Commonwealth, would have been introduced for the first time into the statute in a manner so ambiguous, and where at best it could be regarded as a matter of doubtful construction; when it would have been so easy to make it plain, by expressing it in a different connection.

As we are of opinion, therefore, that the election of the petitioner as one of the school committee was in conformity with the law, though made after sunset, it is the duty of the other members of the committee to admit him to act with them as a member of the committee.

*Peremptory writ of mandamus to issue.*