AMERICAN RAILWAY-FROG COMPANY *vs.* JOHN A. HAVEN & others.

The right to vote, at meetings of the stockholders of a corporation, on shares in its capital stock held on a trust " to hold for the benefit of the corporation," is suspended while they are so held.

*Mandamus* will lie upon the petition of a private manufacturing corporation, to compel the surrender to its lawful officers of books and papers pertaining to their offices and held by persons actually but unlawfully exercising the functions of those offices under a claim of right, having usurped them under the choice of a minority of the stockholders by the use of illegal votes.

PETITION for a writ of *mandamus*, heard by *Wells*, J., and reserved for the consideration of the full court as follows :

" This was a petition brought in the name of the American Railway-Frog Company, (a corporation duly organized under the laws of this Commonwealth,) and signed ' American Railway-Frog Co., by D. N. Pickering, President,' praying this court to issue its writ of *mandamus*, declaring Otto Cuntz to have been duly elected clerk of said corporation and of its board of directors, Charles S. Lincoln, Daniel N. Pickering, Alonzo Bridges, Otto Cuntz, Isaac M. Cate, James Power, and Edward G. Allen duly elected directors, and Isaac M. Cate treasurer, and commanding George H. Hood and Aaron N. Clark to deliver to Cuntz, clerk as aforesaid, and to Cate, treasurer as aforesaid, all the books and papers of the corporation respectively held by said Hood and Clark.

" A rule was granted to show cause why *mandamus* should not issue. And an answer was put in, signed by John A. Haven Moses M. Rounds, Aaron N. Clark, and George H. Hood, in

which they denied that the matters set forth in the petition were sufficient in law to entitle the parties thereto to have or maintain a writ of *mandamus;* denied also that Pickering was president of the corporation and authorized to present the petition in its behalf; alleged that 400 shares, mentioned in the petition as belonging to the corporation and as held by Clark for its benefit, and upon which therefore the petition claimed that the corporation had no right to vote, belonged to Clark, and that he had full right to represent and vote upon them; admitted that Cuntz and Cate demanded from Hood and Clark the books and papers of the corporation, but alleged that Hood and Clark held them as officers of the corporation; and also alleged that the corporation was a private corporation, established for pecuniary gain, and not charged with duties of a public nature or affecting the public interest, and that for the above reasons the prayer of the petition should not be granted.

" At the hearing, (it having been agreed that the same effect should be given to said hearing as if it was upon a writ issued in the alternative,) it appeared that this corporation was organized in 1866, for the purpose of manufacturing and selling railway-frogs, but it did not appear that it had done any business in manufacturing or selling; that the whole number of shares into which the capital stock was divided was 2000; that said shares were issued to various parties, and among others to Aaron N. Clark (and it was not disputed that all the stock had been properly issued to the original stockholders); that 400 shares were afterwards transferred by different stockholders, from shares held by them, to Aaron N. Clark, to hold for the benefit of the corporation; that the stock journal and stock ledger showed that some of these shares were transferred from Aaron N. Clark to Aaron N. Clark, treasurer, and all of them were, by said journal and ledger, charged to Clark as treasurer of the corporation; that by the by-laws the affairs of the corporation were to be managed by a board of directors, consisting of seven persons, to be chosen at the annual meeting; that one of them was to be chosen by said board president of the corporation that the by-laws did not provide or determine what number or

interest should constitute a quorum at a stockholders' meeting; that a clerk and a treasurer of the corporation were also to be chosen at said annual meeting; that, at the annual meeting held in November 1867, Daniel N. Pickering, John A. Haven, Moses M. Rounds, Aaron N. Clark, George H. Hood, Alonzo Bridges, and Edward G. Allen were chosen directors, George H. Hood clerk, and Aaron N. Clark treasurer thereof; that, at the annual meeting held November 5, 1868, it was unanimously voted to proceed to the election of a clerk for the ensuing year by a stock vote, Clark voting on said shares without objection; that thereupon a stock vote was taken for clerk, and the number of shares voted on were 1933, including the 400 above mentioned, held by Clark; that of these 1933 Otto Cuntz had 868, and George H. Hood had 1065, including in said last number the said 400 shares; that, a discussion having risen as to the legal right of Clark to vote on said 400 shares, Clark was authorized by a majority of the board of directors to vote upon them; that the meeting was subsequently adjourned to meet on November 12, when a committee appointed to investigate the legal points relating to Clark's right to vote were to report; that, at the adjourned meeting, Clark, who had been in the meantime authorized by the board to represent said shares, made a motion to adjourn to the first Wednesday of November 1869, the committee having reported that they could not agree; that, a stock vote having been called for, 1988 shares were voted on, of which 928 were in the negative, and 1060, including said 400 held by Clark, were in the affirmative and in favor of adjournment; that the presiding officer then declared the meeting adjourned, and left the chair; that certain stockholders, holding a majority of the shares in the corporation exclusive of the said 400, being of opinion that said vote was in the negative, remained and made choice of a presiding officer; that, it being claimed by them that Cuntz had been declared elected clerk at the previous meeting, he was then duly sworn (but it was denied by the defendants that he was so declared to be elected); that said stockholders proceeded to elect a board of directors, and, upon a stock vote being taken, 868 shares were voted on, and Charles

S. Lincoln, Daniel N. Pickering, Alonzo Bridges, Otto Cuntz, Isaac M. Cate, James Power and Edward G. Allen were chosen directors, and Isaac M. Cate treasurer, each receiving in his favor a majority of all the shares in the corporation, excluding said 400 shares; that said meeting was then adjourned, and a meeting of the persons last above named, claiming to be the board of directors for the then ensuing year was held, at which meeting Pickering was elected president of the corporation, and Cuntz clerk of the board of directors; that Cuntz and Cate, by order of the said persons thus chosen as the board of directors, made a written demand upon Hood and Clark, respectively, for those books and papers of the corporation, of which the clerk of the corporation and the clerk of the board of directors and the treasurer were proper custodians; and that a vote was passed at a meeting of said persons thus claiming to act as the board of directors, authorizing the president elected by them to employ counsel and take all proper steps to obtain legal possession thereof.

"It also appeared that the parties thus claiming to be the newly elected board of directors filed a bill in equity against Haven, Rounds, Clark, Hood and Bridges, for a writ of injunction to restrain them from selling any property of the corporation, and more particularly from selling and transferring said 400 shares, or any of them, and from acting, or pretending to act, as directors and clerk and treasurer, and that they might be ordered to restore all the books and papers of the corporation to those of the petitioners who constituted the newly elected board of directors, and for general relief.

" Upon the foregoing facts it is reserved for the full court to decide whether a peremptory *mandamus* should issue, in whole or in part, as prayed for, or the petition be dismissed."

C. A. Welch, for the petitioners.

A. Churchill, for the respondents.

AMES, J. This petition raises three questions: 1st. Were Otto Cuntz and the five others, whose names are joined with his, duly elected at the annual meeting of the company to the offices which are claimed for them respectively? 2d. If they

were so elected, will *mandamus* lie for the purpose of compelling these respondents, who claim the same offices, to give up the books and papers of the company in their possession? 3d. If *mandamus* will lie, are the circumstances of the case of such a character that the court, in the exercise of a sound judicial discretion, ought to direct the issue of that writ.

The case finds that the capital stock was divided into two thousand shares, all of which were properly issued to the original stockholders; and that sometime afterwards four hundred of these shares were transferred by some of the stockholders to Aaron N. Clark " to hold for the benefit of the corporation." If these transfers had been made directly to the corporation, without the intervention of a trustee, it would hardly be contended that it would thereby become entitled to vote at a meeting of stockholders. A corporation cannot literally be one of its own stockholders in the full sense of that term. Such a transfer might not operate as a mere surrender or cancellation of stock, unless so intended. It would not diminish the amount of the capital, nor necessarily reduce the number of shares. The corporation might perhaps receive such a transfer, and hold the stock so conveyed to it, for the purpose of reissue to new subscribers or purchasers. By the terms of the transfer, Clark holds " for the benefit of the corporation," and of course subject to its order. This is the extent of his trust. Nothing in the nature of it makes it necessary that he should vote, as the holder of those shares. There is no apparent reason why he, not being beneficially or practically the owner of them, should be endowed with the privilege of controlling four hundred votes according to his own judgment or pleasure, especially when it is taken into consideration that the corporation for which he holds them has no right of voting in any event. It is easy to see that any such privilege would not only be unreasonable and unfair, but might lead to great abuses. The position of these shares, in our judgment, is the same, to all intents and purposes, so far as the right of voting upon them is concerned, as if they were held directly by the corporation itself; and, until they are sold and transferred by its authority, the right of voting upon them is suspended.

*Ex parte Holmes,* 5 Cowen, 426. *Ex parte Willcocks,* 7 Cowen, 402. It follows then, that, at the annual meeting in question, the votes on these four hundred shares ought not to have been received or counted; that the whole number of competent and legal votes was fifteen hundred and thirty-three, and no more; that Cuntz and his five associates received a clear majority of these votes; and that they were duly elected to the offices claimed for them respectively in the petition.

We then come to the second question, namely, Whether this is one of the cases in which the court has the power to issue the writ of peremptory *mandamus.* We must consider this petition as the petition of the corporation. The respondents are not its officers, but are mere intruders and wrongdoers, their term of office having expired. In the case of a public office or corporation, it is not denied that this writ might issue if the petitioner's title were first made out. It is well settled that it can be granted, for instance, to compel a town clerk, or a clerk of a public corporation, whose office has expired, to deliver over to his successor the common seal, books, papers and records of the corporation, which had belonged to his custody. Some of the cases go so far as to say, that "indeed it lies to any person who happens to have the books of a corporation in his possession and refuses to deliver them up. In fact it is the peculiar and appropriate remedy in such a case." *Rex* v. *Wildman,* 2 Stra. 879. 2 Kyd on Corporations, 301. Angell & Ames on Corporations, (6th ed.) § 707 and cases cited. *St. Luke's Church* v. *Slack,* 7 Cush. 226. It is described by Lord Mansfield as a very beneficial writ, which may be issued by the court where there is no other specific remedy. *The King* v. *Commissioners of Land Tax,* 1 T. R. 148. It will not be granted where the applicant has another adequate, specific, legal remedy. *Rex* v. *Barker,* 3 Burr. 1267. *The King* v. *Bishop of Chester,* 1 T. R. 404. 2 Kyd on Corporations, 297. *In re White River Bank,* 23 Verm. 478. But the remedy, in order to be a bar to the issuing of the writ, must not only be adequate but also specific; and damages recoverable for the violation of the right are not such specific remedy. In the case at bar, it is difficult to see in what way the petitioners

can obtain such adequate and specific relief, if their petition should be refused. The same four hundred illegal votes that have created the difficulty may perhaps be employed to render it permanent.

The respondents insist, however, that, inasmuch as they are actually in possession of the offices in question, under a claim of right, and exercising the functions annexed to them, the only mode of controverting their title is by a writ of *quo warranto.* The fact that the offices are *de facto* filled and occupied by rival claimants is by no means decisive, and perhaps not very material, upon this point. *Borough of Bossiny,* 2 Stra. 1003. *Borough of Aberystwith,* Ib. 1157. *Corporation of Scarborough,* Ib. 1180. *The King* v. *Bedford Level Co.* 6 East, 356. It has been so decided in the case of conflicting claims to the office of county commissioner. *Strong, petitioner,* 20 Pick. 484. Also in the case of members of a school committee. *Conlin* v. *Aldrich,* 98 Mass. 557. It may be, that, if a petition for *mandamus* were literally in the name and for the benefit of a claimant of an office against an actual incumbent, the parties would be left to a *quo warranto;* but however that may be, the case of *St. Luke's Church* v. *Slack,* 7 Cush. 226, seems decisive upon the point that, in the case of a public corporation, a *mandamus* may issue on its petition against persons claiming to hold its offices.

Upon the third of the questions raised by the case at bar, it is claimed that, as the writ of *mandamus* is not a writ of right, but is only to be granted at the discretion of the court, in view of all the circumstances, the present is not a proper case for the exercise of that discretion. The respondents insist that, even upon the assumption that the object of the petition is to compel them to do what they are bound in duty to do, and what the petitioners have a clear and manifest right to have done, and upon the assumption also that the petitioners have no adequate specific remedy except what the writ would give them, yet the writ is only to be issued for public purposes, and to compel the performance of public duties, and for that reason ought not to be granted on the present occasion. This objection is the only

one that has given us any considerable embarrassment. It is insisted that this company, although called a corporation, differs very little from a mere copartnership; that it is in fact a mere association for trading purposes; that it is not concerned with any public charity or trust or institution, or any public interest of any kind, and that its affairs are not matters of public concern in such a sense as to justify the exercise by the court of any extraordinary power.

The writ is defined, by the earlier writers, as a high prerogative writ, flowing from the king himself sitting in the court of king's bench, superintending the police and preserving the peace of the country; and it is also called one of the flowers of that court — a definition which throws very little light upon the question as to the occasions that will require or justify its issue. The old rule undoubtedly was, that it was only to be issued in cases of public interest or having some relation to public offices or rights; but in the time of Lord Mansfield a more liberal doctrine was established, and the writ was used more freely. On a review of the authorities, it seems substantially certain that it is by no means confined to cases of a public nature, or to public corporations. It has often been issued in cases where the corporation partook very slightly, if at all, of a public character, and where the question in controversy was rather upon some matter of private right. *Schriven's case*, 2 Stra. 832. *Rex* v. *Wildman*, Ib. 879. Thus, to compel the swearing in of a director in the Amicable Assurance Company, a company chartered by the crown; *Anon.* 2 Stra. 696; to compel a trading company to admit a member; *Dacosta* v. *Russia Co.* 2 Stra. 783; to compel a company to admit a Quaker on his affirmation, he refusing to be sworn; *Rex* v. *Turkey Co.* 2 Burr. 999. See also *White's case*, 2 Ld. Raym. 1004; 2 Kyd on Corporations, 299. The more recent English cases on the subject are of the same general tendency, and some of them perhaps depart rather more widely from the ancient rule than any of the decisions of the American courts. For instance, it has been granted to compel the master of a corporation to affix the seal to an instrument legally executed by the majority; *The Queen* v. *Ken-*

*dall*, 1 Q. B. 366 ; to compel a company to enter upon its 'ooks the probate and will of a shareholder ; *The King* v. *Worcester & Birmingham Canal Co.* 1 Man. & Ryl. 529 ; to compel a joint stock company to pay the amount of an award against them ; *The King* v. *St. Katharine Dock Co.* 4 B. & Ad. 360 ; to compel one manager of a charity to deliver to another one key of a coffer, where each is authorized to have one (and it was held to be no objection to the rule, that it was a private charity) ; *The Queen* v. *Abrahams*, 4 Q. B. 157.

In our own country the writ has been issued in the case of corporations and claims, some of which, at least, might more properly be called private than public, namely, to restore bank directors who had been refused the exercise of their rights as directors by a majority of the board ; *Prieur* v. *Commercial Bank*, 7 Louisiana, 509 ; to restore a member of a navigation company who had been improperly disfranchised ; *Delacy* v. *Neuse River Navigation Co.* 1 Hawks, 274 ; to maintain the right of a bank director to see the discount book, although his associates, from a belief that he was unfriendly to the interests of the corporation, had by a resolution directed the cashier to refuse to show it to him ; *People* v. *Throop*, 12 Wend. 183 ; to restore a trustee of a private academic corporation, though no emoluments were attached to the office ; *Fuller* v. *Plainfield Academic School*, 6 Conn. 532 ; to restore members of private corporations for charitable purposes, illegally expelled. *Commonwealth* v. *German Society*, 15 Penn. State, 251. In the case of *Barrows* v. *Massachusetts Medical Society*, 12 Cush. 402, this court refused to grant the writ to compel the restoration of a member who had been expelled, on the ground that it did not appear that he had been wrongfully expelled.

In a matter depending upon a sound judicial discretion, it is difficult and perhaps impossible, from the nature of the case, to lay down in advance a precise and inflexible rule to govern the exercise of that discretion. Some of the text books go so far as to say that the writ is never issued except in the case of public persons or officers, or to compel the performance of public duties. Tapping on Mandamus, 12. They all, however, agree in adopt

ing Lord Mansfield's rule, that the value of the matter and the degree of its public importance are not to be too nicely and scrupulously weighed.

There are two English cases that must not be overlooked. One of them, *The King* v. *Bank of England*, 2 B. & Ald. 620 was upon an application by a stockholder of that bank for a *mandamus* to compel the governor and company of the bank to produce their accounts and make a dividend of the profits. The court refused to grant the writ, Abbott, C. J., saying: " This is an application for a *mandamus* to a trading corporation, at the instance of an individual member, to compel his copartners to produce their accounts of profit and loss, and to divide their profits, if any there be. The examination of the accounts of a trading company may be effectually entered into in the court of chancery, but this court is a very unfit tribunal for such a subject. A mere trading corporation differs materially from those which are intrusted with the government of cities and towns, and therefore have important public duties to perform. No instance has been cited in which the court has granted a *mandamus* to a corporation like the present, and I think we ought not now to establish the precedent." Best, J., said : " If we were to grant this rule, we should make ourselves auditors to all the trading corporations in England." The other case, *The King* v. *London Assurance Co.* 5 B. & Ald. 899, was a petition for a *mandamus* to compel a transfer of shares standing in the name of a bankrupt stockholder to his assignees. The court say : " We are not aware of any instance of a *mandamus* like the present having ever been granted, and if we were to grant this, we should be called upon to interfere in all cases of dispute between the members of private corporations. This company, although carried on under a royal charter, is a mere private partnership. But the writ of *mandamus* is a high prerogative writ, and is confined to cases of a public nature. Rule refused."

Both of the above were cases against a corporation, in that respect differing from the case at bar. It is very manifest that neither of them would have justified the issue of the writ. But it is equally manifest that the impropriety of issuing the writ in

those cases had very little to do with the question whether the corporation was of a public or a private character. The real difficulty was in the nature of the applicant's interest, and the character of the investigation proposed. The court might well refuse to be the auditor of accounts for a trading company. It is not claimed that the process of *mandamus* against a corporation is suitable or proper for the investigation of the details of commercial business, or for the adjustment of matters in the nature of partnership accounts. The case at bar is not a process of a private stockholder against a corporation, but a petition by the corporation to protect itself in the enjoyment of its chartered rights, and to secure to itself the benefit of a due and legal organization. " There has been a good deal of refinement and subtlety in the distinctions which have been applied to the decision of questions of this kind, so that it is not very easy to say when a *mandamus* ought to be granted, or not." Grant on Corporations, 272. It is very clear that it ought not to be granted where the court can see that the question arises merely from an indisposition of the minority to be controlled by the majority; or where it is sought merely for the auditing of accounts, or settling disputes, such as arise among copartners, or going into the details of commercial affairs. The refusal of the writ in such cases does not appear to stand upon the ground that the court will not so interfere with private corporations; "because it often has so interfered." Grant on Corporations, 272. But we think that a writ of *mandamus* might very properly issue on the application of a manufacturing corporation, where it is essential to justice, in the way of securing the benefits of its charter, or the due and proper observance of the laws in relation to its organization. The case at bar presents an instance in which a minority of the stockholders, by the use of illegal votes, have usurped powers that do not belong to them, and have deprived the majority of its power to govern. We do not think that, under such circumstances, and in the exercise of our discretion, the *mandamus* should be refused for the sole reason that the party seeking redress is a manufacturing corporation.

*Peremptory mandamus to issue.*