[No. 462.   January Term, 1891.]

PEDRO DELGADO, Petitioner, v. FRANCISCO
CHAVEZ, Sheriff, Respondent.

Habeas Corpus—Mandamus—Contempt—Jurisdiction.—On an applica-
tion for writ of habeas corpus, by the probate clerk of Santa Fe county
and ex officio clerk of the board of county commissioners, to be dis-
charged from commitment for contempt of court, in refusing to obey
a peremptory writ of mandamus commanding him, in his official capac-
ity, to recognize one of two rival sets of claimants for the office of
county commissioner, and to refuse to recognize the other, on the
ground that the writ of mandamus could not be invoked as a means
of contesting the right of the rival claimants to the office—Held:
The court had jurisdiction of the subject-matter and of the parties to
the mandamus proceeding, and the writ was not void because it
involved incidentally, if not directly, the title set up by the rival claim-
ants.   The objection interposed was no justification for refusal to
obey the mandate of the court, and the application must be
denied.

PETITION for writ of habeas corpus.   Petition
denied, O'BRIEN, C. J., dissenting.

The facts are stated in the opinion of the court.

FREEMAN, J.—This is an application for writ of
habeas corpus to be discharged from the custody of the
sheriff of Santa Fe county, New Mexico.   The petition
is very voluminous, and sets out in full a certain pro-
ceeding in mandamus instituted against the relator by
Abraham Staab, Juan Garcia, and William H. Nesbitt,
on the thirteenth day of January, 1891, seeking to
compel the relator, as probate clerk of the county of

Santa Fe and ex officio clerk of the board of county commissioners, to perform certain official duties. This is one of the unfortunate proceedings that grew out of the closely contested election held in the county of Santa Fe on the fourth of November, 1890. Rival sets of county commissioners claim to have been elected. Candidates of both parties held what they claimed to be valid and proper certificates of election. An alternative writ of mandamus was issued against the relator, commanding him to recognize the petitioners to that writ as the legally elected board. In his answer to the writ the relator admitted that he had declined to recognize the petitioners, and sets out at length his views as to who were entitled to exercise the functions of county commissioners. The cause having been heard by the district judge, a peremptory writ was issued. The relator refusing to obey the writ, an attachment was issued, and on the hearing he was committed to jail until he should purge himself of the contempt.

In the case of John H. Sloan and Teodoro Martinez (heard and determined at the present term of this court), we have discussed at some length HABEAS corpus: the power of the district judge to issue the mandamus: contempt: jurisdiction. writs of mandamus and injunction, and to punish for contempts. Much of what has been said in that case finds appropriate application to this. The case at bar, however, differs from the case of Sloan and Martinez in this: that the latter case involved the right of the district judge to direct the canvassers to canvass the votes cast at the election, while in the present case the question involved is as to the jurisdiction of the court to issue the writ to the probate clerk, directing him which of the two rival boards he should recognize as the lawful body. We have no doubt but that the judge had jurisdiction of the subject-matter and of the parties; and this conclusion settles, as we think, the whole question raised by this proceeding.

The writ of mandamus long since ceased to be a prerogative writ. It is no longer an extraordinary proceeding, except in the sense that an injunction, attachment, or other like process is extraordinary. "It is equally well settled that a mandamus in modern practice is nothing more than an action at law between the parties, and is not now regarded as a prerogative writ." Com. of Ky. v. Dennison, 24 How. 97. It would be a vain and useless exhibition of research to undertake to point out the almost innumerable instances in which this writ has been successfully invoked. The following instances will serve to illustrate the general purposes for which the writ will lie: To compel the allowance of an appeal, Ex parte Cutting, 4 Otto, 14; to allow a pension, Decatur v. Paulding, 14 Pet. 497; to compel district judge to issue execution, Postmaster Gen. v. Trigg, 11 Pet. 173; to compel railroad company to deliver rolling stock, Ex parte Milwaukee R. Co., 5 Wall. 825; to compel counties to pay judgments, Supervisors v. U. S., 4 Wall. 435; to enforce mandates, U. S. v. Fossatt, 21 How. 445; to reinstate cause, Ex parte Bradstreet, 6 Pet. 774; to compel levy of tax to pay judgment, U. S. v. Council of Keokuk, 6 Wall. 514; to compel court to enter judgment, Insurance Co. v. Adams, 9 Pet. 573; to compel court to sign bill of exceptions, Ex parte Crane, 5 Pet. 190; to compel postmaster general to perform ministerial duty, Kendall v. U. S., 12 Pet. 524; to compel register of land office to enter application for land, McCluney v. Silliman, 2 Wheat. 369; to compel court of claims to entertain motion for new trial, Ex parte Russell, 13 Wall. 664; to restore an attorney disbarred by court having no jurisdiction, Ex parte Bradley, 7 Wall. 364; to compel town officers to audit charges against the town, Lower v. U. S., 91 U. S. 536. In Ohio, Alabama, California, Maryland, North Carolina, Indiana, and Montana the writ will lie to compel the governor of the state to perform

a merely ministerial duty.   High Extr. Rem., sec. 119.
It has been also successfully invoked to compel an old
officer to deliver records which concern justice to the
new one; to compel the clerk of a company to deliver
up books, etc.; or the steward of a borough to attend
with the books at the next corporate assembly, etc., 5
Com. Dig. 34.   In the case of Railway Frog Co. v.
Haven et al., 101 Mass. 403, it was said:   "It is well
settled that it can be granted, for instance, to compel a
town clerk or clerk of the public corporation, whose
office has expired, to deliver over to his successor his
common seal, books," etc.   In the case of Conlin v.
Aldrich, 98 Mass. 557, the following facts appeared.
The town meeting had been held at which Conlin was
chosen as a member of the school committee for the
term of three years; but the polls were open and the
election was made after sunset.   This election was
treated as invalid, and another meeting called, at which
Burditt was elected to the same office.   The town clerk
gave to Conlin a certificate of his election, but Aldrich
and Start, who were the two other members of the
committee, refused to recognize him as their associate,
or to permit him to act as such; they recognizing Bur-
ditt as properly elected.   The application of Conlin for
a writ of mandamus was allowed; HOAR, J., declaring:
"It is not very strongly contested by the respondents
that the appropriate remedy for the petitioner, if he is
entitled to any relief, is the writ of mandamus.   That
point is substantially settled by the case of In re Strong,
20 Pick. 484."

This case, like the one at bar, presents the condi-
tion of rival claimants for the same position.   So, also,
of the case just cited from 101 Mass., where it was
said:   "The respondents insist, however, that inas-
much as they are actually in possession of the offices in
question under a claim of right, and exercising the
functions annexed to them, the only mode of contro-

verting their title is by writ of quo warranto. The fact that the offices are de facto filled and occupied by rival claimants is by no means decisive, and not very material upon this point. It has been so decided in the case of conflicting claims to the office of county commissioner (In re Strong, 20 Pick. 484), also in the case of members of a school committee (Conlin v. Aldrich, 98 Mass. 557)." In the case of Jennings v. Fisher et al., 61 Mass. 239, it was said: "This writ, no doubt, is more freely and frequently granted at the present time than it was formerly. It lies to a former town clerk or clerk of a company to deliver to his successor the common seal, books, papers, and records of the corporation, which belong to his custody. Indeed, it lies to any person who happens to have the books of a corporation in his possession, and refuses to deliver them up. In the case of Kimball v. Lamprey, 19 N. H. 220, GILCHRIST, C. J., said: "There are numerous authorities tending to show in what case a writ of mandamus is the appropriate remedy. In the case of Com. v. Athearn, 3 Mass. 285, it is estimated by PARSONS, C. J., that the proper mode is for the successor of the town clerk to take the oath of office, and to demand of the former clerk the records, and, if they are refused, then to move for a mandamus to command him to deliver over the records. It was alleged in that case that the defendant was in possession of the office, but was not so legally. In the First Parish in Sudbury v. Stearns, 21 Pick. 148, trover was brought against the defendant for the book of record of the parish. His defense was that he was the clerk, and, as such, had a right to the possession of the records. MORTON, J., says: 'A mandamus would doubtless be a more appropriate and effectual remedy to compel the delivery of the records to the legal officer;' and he cites the case of Com. v. Athearn. The rights of persons acting colore officii can be tried only in an information in the nature

of a quo warranto or on a writ of mandamus." To the same effect is the doctrine laid down by the supreme court of Vermont in the case of Allen Stone et al. v. Small et al., the syllabus of which is as follows: "(1) Mandamus is the proper remedy to compel the old trustees of an incorporated village, attempting to hold over, to deliver to the new board the books, papers, and articles of personal property in their possession belonging to the village, and to prevent their interfering with the new trustees in the exercise of their office. (2) When an act incorporating a village imperatively declares that its trustees shall be annually elected on a certain day, the majority of a meeting called for the purpose of electing such officers has no power to adjourn the meeting without day, in fraud of the law and the minority; and if a legal minority, immediately following such adjournment, reorganizes the meeting and elects trustees, they are entitled to hold their office.

These authorities, we think, demonstrate the fact that although the proceeding by mandamus against the relator involved incidentally, if not directly, the title set up by the rival set of commissioners, the mandamus was not for that reason void. It was resisted, however, by the relator on the ground that it could not be used as a means of contesting the right of the rival claimants to the office. There might be much force in the reasons assigned in support of this doctrine if alleged against the propriety of the proceedings by mandamus; but the mistake of the relator lay in supposing that this objection could be successfully interposed as a justification for a refusal to obey the mandate of the court. There is a marked difference between the utter want of jurisdiction and an erroneous exercise thereof. The former may be pleaded as a justification for a refusal to obey the order of the court, but the latter can not. Cohen v. Jones, 5 Cal. 495;

Church Hab. Corp., sec. 317. In the case of People
ex rel. Garbrett v. R. & S. L. Railroad Co., 76 N. Y.
298, it was said: "The question of the propriety of
that order is not now before us; the present appeal
being only from the order adjudging the appellants
guilty of contempt in not having obeyed the writ." "It
is insisted, however, that the mandamus was void for
the reason that it was vague and uncertain in its com-
mand; that it required the relator, not only to recog-
nize certain parties as entitled to exercise the functions
of the office, but that he was also commanded, among
other impracticable things, to enter all of the past, as
well as the future, orders of said board; that the writ,
in effect, commanded him to do what was not then,
and might never become, this duty." This writ did
not, as we understand it, seek to impose on the relator
any impracticable or difficult duty. It simply required
him to perform his usual and ordinary duties as ex offi-
cio clerk to the board. Whatever this board had
already done that had not been recorded was to be
recorded, and he was to attend from time to time, in
the future, to perform his usual functions in the usual
way. It is not pretended that it was not in his power
to obey the leading and all-important command laid
upon him. It is not possible that he could have mis-
apprehended the principal purpose of the writ, which
was to direct him to recognize in his official capacity
one of the rival sets of claimants, and to refuse to rec-
ognize the other. He seems to have misapprehended
entirely the functions of his office. He was not author-
ized by law to determine who were, and who were not,
the legally elected commissioners. That question had
already been determined, so far, at least, as to bring
his ministerial duties within the jurisdiction of the
court. It does not follow, because the court ordered
him to do that which in part he could not do, that,
therefore, the writ was void. In the case of U. S. ex

rel. v. Labette Co., 2 McCrary, 27, a writ of mandamus was issued to compel the supervisors to levy, collect, and pay over certain taxes.   The respondents levied the tax, but returned that they had no power, process, or authority by which they could collect it.   A writ of attachment having been issued, they were discharged for the reason that, having done all in their power to obey the writ, they were not guilty of contempt.   This question was discussed at some length in People ex rel. v. Nostrand, 46 N. Y. 378.   In that case it was said: "It was also urged upon the argument that the order should be reversed because the precise amount is not specified in the peremptory writ.   This position is not tenable.   All that is necessary is that the thing to be done should be described with reasonable certainty— with such certainty that the defendant will know what is required of him.   This rule is peculiarly applicable to public officers who are commanded to perform a public duty, and especially where the facts constituting the act are within their personal knowledge."   After citing many authorities in support of this view, the court proceeds to say:   "These and other authorities establish that it is sufficient to inform public officers in a general way what their duty is, and to command its performance, unless they can justify or excuse the neglect.   They can not shield themselves behind technical objections to the descriptive part of the act to be done."

Numerous other authorities might be cited in support of the general proposition that on an application for writ of habeas corpus to be discharged from commitment for contempt, it can not be shown that the proceedings out of which the action for contempt proceeded were irregular.   Cooley Const. Lim. 348, and cases cited.   And in support of the proposition that a proceeding by mandamus is not void by reason of mere irregularity, but that it may be good as to part, and bad as to part, we cite:   Ex parte Parks, 93 U. S. 18;

Ex parte Rowland, 104 U. S. 604; Ex parte Clark, 100 U. S. 399; and Ex parte Diebold, 100 U. S. 37. Assuming, however, for the purpose of the argument, that the relator did not properly comprehend the terms of the mandate addressed to him; assuming that, in the presence of rival claimants for the office, he was at a loss to know how he should proceed; assuming that he honestly believed that the petitioners in the mandamus proceeding had not been elected, and were not, therefore, entitled to exercise the functions of the office— what, then, was his plain and unmistakable duty? Was it his province to make an issue with a court of competent jurisdiction, and, after having the questions thus presented decided against him, to defy the power of the court? Can he escape now the rightful consequences of his contumacy by pretending that he did not understand what was required of him? On this point the case already referred to in 46 N. Y. is instructive. It was there said (page 378): "If he desired in good faith to comply with the writ, but was unable to do so from the uncertainty of the mandate, the court would doubtless relieve him. But in this case there was no room for doubt. The act to be performed was specifically described, and there is no pretense that the appellant did not know what was required, or that he was unable to perform it." In view of these considerations, and in view of the opinion of this court already expressed in the case referred to of Sloan and Martinez, we are of the opinion that the writ must be dismissed, and the relator remanded to the custody of the sheriff to be confined in the county jail until he purges himself of the contempt for which he was committed; and it is so ordered.

LEE and McFIE, JJ., concur.

O'BRIEN, C. J. (dissenting).—I regret my inability to agree with the disposition made of this case as

announced in the foregoing opinion. It would serve
no useful purpose to repeat the facts in the brief state-
ment of the reasons that compel me to dissent. In the
alternative writ the relator is required to act as follows:
"Now, therefore, you, the said Pedro Delgado, pro-
bate clerk of the county of Santa Fe, and ex officio
clerk of the board of county commissioners of said
county, are hereby commanded that, immediately after
the receipt of this writ, you produce the books in which
are kept the records of meetings and proceedings of the
board of county commissioners of Santa Fe county,
and to record therein the records of the meetings of
said board and the proceedings thereof held on the sec-
ond day of January, 1891, and record in said record of
minutes and proceedings the record of minutes and
proceedings of all other meetings heretofore had by the
board of county commissioners which may not have
been recorded in said records, and also record all the
proceedings of said board which hereafter may be had,
and that in doing so you act as the ex officio clerk of
the board of county commissioners, of which said board
said Abraham Staab, Juan Garcia, and William H.
Nesbitt are members, and that you act with no other
persons whatever pretending or claiming to act as a
board of county commissioners of the county of Santa
Fe, and that you make regular entries of all their reso-
lutions and decisions in all questions concerning the
raising of money, and that you record the vote of each
commissioner on any question submitted to the board,
if required by any member; that you sign all orders
issued by the said board for the payment of money,
and record in a book printed for that purpose the
receipts of the county treasurer of the receipts and ex-
penditures of the county, and that you do and perform
all acts required of you by law as ex officio clerk of the
board of county commissioners of Santa Fe county,
in connection with said Abraham Staab, Juan Garcia,

and William H. Nesbitt, as the proper and only persons composing the board of county commissioners of Santa Fe county, and that you do recognize the said Abraham Staab, Juan Garcia, and William H. Nesbitt as the only lawful county commissioners of Santa Fe county, and as composing the only lawful board of county commissioners of said county, and that you do furnish to said board all the books, records, files, and papers of your said office for their use, inspection, information, and government in the discharge of their duties as the board of county commissioners of said county, and that you do not furnish them to any other person or persons except as the law may require you to do for the inspection and information of private individuals, or that you show cause, before the First judicial district court of the territory of New Mexico in and for the county of Santa Fe, at chambers, in the federal building in the city of Santa Fe, N. M., on Wednesday, January 14, 1891, at 9 o'clock A. M., why you have not done so," etc.

On the return day of the writ, the relator, Delgado, appeared and filed his answer thereto, as follows:

"Territory of New Mexico, county of Santa Fe. In the district court of Santa Fe county. The territory of New Mexico, on the relation of Abraham Staab and others v. Pedro Delgado. Mandamus. No. 2838.

"The above named defendant, Pedro Delgado, now and at all times hereafter reserving unto himself all manner of objections and exceptions to the many uncertainties, imperfections, and insufficiencies in the alternative writ of mandamus issued in the above named cause, for answer thereto, or so much thereof as he is informed and advised that is necessary for him to make answer unto, answers and says that he admits that at the general election held in the said county of Santa Fe on the 4th day of November, 1890, he, the said defendant,

was duly elected clerk of the probate court of the said
county, and that on the first day of January, 1891, he
having duly qualified as such clerk, and entered upon
the discharge of the duties of such office, and that he
has continuously since said last mentioned date been in
the possession of such office, and has been ex officio
clerk of the board of county commissioners of said
county, and has had and held possession of the records
and books, which by law he is made the custodian of.
Said defendant admits that in the month of November,
1890, and for a long time prior thereto, and until the
1st day of January, 1891, George L. Wyllys, Teodoro
Martinez, and John H. Sloan were the legally elected
and lawfully acting members of the board of county
commissioners of the county of Santa Fe, in said terri-
tory; but he denies that the said Wyllys and Martinez,
or either of them, were ever removed from their said
offices, or that the office held by either of said persons
became vacant prior to the expiration of their terms,
to wit, on the 1st day of January, 1891; and he denies
that either of the said persons abandoned their said
offices, or that they, or either of them, refused to per-
form the duties and functions thereof; and he denies
that George W. North and Frederic Grace, or any
other persons were ever legally appointed by the acting
governor of the territory of New Mexico, or any other
person, as members of the board of county commis-
sioners of said county; and he denies that said George
W. North and Frederic Grace, or either of them, were
ever members of the board of county commissioners of
said county, or that they, or either of them, ever had
any power or authority to perform the duties or exercise
the functions of said offices. And this defendant avers
the fact to be that on the fourth day of November,
1890, and for many months prior thereto, and contin-
uously until the first day of January, 1891, John H.
Sloan, George L. Wyllys, and Teodoro Martinez were

the duly elected and qualified members of the board of county commissioners in and for the county of Santa Fe, in said territory, and that they, each and all of them, continued to hold such office, and were in the actual possession thereof, and performing all the duties and functions of such offices, during all of the year 1890, and up until the first day of January, 1891. This defendant denies that at the election held in the county of Santa Fe on the fourth day of November, 1890, Abraham Staab, Juan Garcia, and William H. Nesbitt, or either of them, were elected as members of the board of county commissioners of said Santa Fe county; and he denies that the said Staab, Garcia, and Nesbitt ever obtained, or that they now have or hold, any certificates showing that they, or either of them, was at said election elected as members of the board of commissioners of said county; and said defendant also denies that the said Abraham Staab, Juan Garcia, and William H. Nesbitt, or either of them, have ever qualified as members of said board of commissioners; and he denies that the said Staab, Garcia, and Nesbitt, or either of them, have, by virtue of any such election, had or held possession of the office of a member of the board of county commissioners of said county, or that they, or either of them, have held any session as members of said board of county commissioners by virtue of such election, nor have they, or either of them, by virtue of such election performed any of the duties pertaining to such office; but he alleges the fact to be that at the general election held in and for said county of Santa Fe, in said territory, on the fourth day of November, 1890, George L. Wyllys, Charles M. Creamer, and Eugenio Martinez were each duly elected as members of the board of commissioners in and for the county of Santa Fe, and territory of New Mexico, the said Wyllys, Creamer, and Martinez receiving at said election the greatest number of legal votes cast at said

election in said county for said offices of county commissioners for said county, and after said election returns thereof were made as required by law, and the board of county commissioners then in office for said county, met as a canvassing board of election for said county, and duly counted and canvassed all the votes cast in the several precincts in said county at said election, returns of which were before said board, and after counting and canvassing said votes and returns, the said board of commissioners, as such canvassing board, ascertained that the said George L. Wyllys, Charles M. Creamer, and Eugenio Martinez had been and were duly elected as members of the board of county commissioners for said county of Santa Fe at said election, all of which was duly entered of record; and thereupon said board of commissioners, as such canvassing board, issued under their hands and the seal of said board certificates to said Wyllys, Creamer, and Martinez, setting forth that they had been duly elected at said election as members of the board of county commissioners of said county of Santa Fe, which said certificates were duly attested by the probate clerk of said county; and afterward, to wit, on the first day of January, 1891, the said Charles M. Creamer and Eugenio Martinez, each having duly qualified as members of the board of county commissioners of said county of Santa Fe, they entered into possession of, and assumed the duties of, their said offices, and met together in the courthouse of said county, in the city of Santa Fe, as the board of county commissioners of said county, and proceeded to transact business as such, and the said Creamer and Martinez have continuously from said first day of January, 1891, had and held possession of said offices, and at the present time, and at the date of issuing of the alternative writ of mandamus in this action, the said Creamer and Martinez were and are holding and are in the possession of said

offices, and are now, and have at all times since the first-day of January, 1891, been, the legal, acting members of the board for the said county of Santa Fe, and have during all of said time been transacting the public business of said county as such commissioners. Said defendant states that he is not informed as to what acts or proceedings were done or had by one Frederic Grace and one George W. North, pretending to act as members of the board of county commissioners in reference to the counting and canvassing the returns of election of the general election held in said county on the fourth day of November, 1890, but he states whatever they may have done in that respect was wholly illegal, and of no effect, for said Grace and North were not, at the time of their said pretended action and the counting and canvassing of said votes, members of the board of commissioners of said county of Santa Fe. Said defendant admits that he has refused to recognize Abraham Staab, Juan Garcia, and William H. Nesbitt as members of the board of commissioners of said Santa Fe county, for the reason that they have never been elected and qualified as such officers, and because they have not been in the possession of said offices, and have never acted as members of such board and denies that said Staab, Garcia, and Nesbitt have ever met as such board, or held any session as such, as set forth in the alternative writ of mandamus herein, but he says that since the first day of January, 1891, Charles M. Creamer and Eugenio Martinez have been the legal and acting board of commissioners of said county. As to all the allegations and statements set forth in said alternative writ, not herein expressly admitted or denied, the said defendant states that he has not sufficient information upon which to form a belief, and he therefore denies all of said allegations.

"PEDRO DELGADO."

"Pedro Delgado, being duly sworn, on his oath states that the facts set forth in the foregoing answer are true to his best knowledge, information, and belief.

"PEDRO DELGADO.

"Subscribed and sworn to before me this 15th day of January, 1891.

"N. B. LAUGHLIN, Notary Public."

Thereupon, on the motion of Staab, Garcia, and Nesbitt, the three alleged county commissioners before mentioned, without further hearing or proceedings, the alternative writ was made peremptory; and thereafter, on the affidavit of said William H. Nesbitt, filed January 19, 1891, the following order was entered:

"It being shown to the court by the petition and affidavit of William H. Nesbitt, filed this 19th day of January, 1891, in the cause lately pending in said district court, in which Abraham Staab, Juan Garcia, and William H. Nesbitt were relators, and Pedro Delgado was respondent, that the said defendant, Pedro Delgado, has refused, and still does refuse, to obey the peremptory writ of mandamus issued out of this court in said mandamus proceeding on the 15th day of January, 1891, it is ordered by the court that an attachment for contempt, returnable at five o'clock this afternoon, issue for the arrest of said defendant, Pedro Delgado.            "EDWARD P. SEEDS,

"Associate Justice, &c.

"Santa Fe, New Mexico, January 19, 1891."

Thereafter, on January 20, 1891, the following final judgment was entered:

"It is considered and adjudged by the court that said defendant, Pedro Delgado, is guilty of contempt of this court in refusing to obey and in disobeying the command of said writ of mandamus; and it is further adjudged by the court that said Pedro Delgado stand committed to the common jail of Santa Fe county until

he purge himself of such contempt, and that a warrant
of commitment issue against him.

"EDWARD P. SEEDS,
"Associate Justice, &c.

"Santa Fe, New Mexico, January 20, 1891."

In pursuance of this judgment, a commitment
issued, and Delgado was imprisoned in the county jail.
To be relieved of such imprisonment, he instituted his
present habeas corpus proceeding before this court.

In this connection, I cite chapter 60, Laws, 1887,
section 1: "That in all cases of proceedings by man-
damus in any district court of this territory, the final
judgment of the court thereon shall be reviewable by
appeal or writ of error, in the same manner as now pro-
vided by law in other civil cases, except that such
appeal or writ of error shall not operate as a supersedeas
of any judgment of the district court." The judgment
of the district court was the imprisonment of Delgado
until he obeyed the commands of the peremptory writ;
and, according to the provisions of the statute above
cited, no appeal or writ of error could release him from
such imprisonment, no matter how erroneous or illegal
the judgment authorizing it might be, until the final
determination of the appeal or writ of error in this
court.

The gist of all the orders contained in the alterna-
tive and peremptory writs of mandamus is that Delgado
recognize Abraham Staab, Juan Garcia, and William
H. Nesbitt as the only persons composing the lawful
board of county commissioners of Santa Fe county.
All other acts commanded are the mere incidents of
this recognition. The answer of Delgado to the alter-
native writ showed in apt terms why he did not so
recognize them. Without admitting or denying the
validity of this writ, I am clearly of the opinion that
Delgado's answer thereto raised a material issue of fact.
The motion of the county commissioners to make the

writ peremptory, notwithstanding the answer, was in the nature of a demurrer to its sufficiency; and the judgment of the court, in granting that motion, was, in effect, an order sustaining such demurrer. This, in my judgment, was substantial error, from the consequences of which Delgado can not be relieved by appeal or writ of error. He is in jail, and has no adequate remedy against such illegal imprisonment, unless it may be afforded him in this proceeding. I do not overlook the provisions of section 2013, Compiled Laws, 1884. It must not be forgotten, however, that that section contains the following qualification: "But no order of commitment for any alleged contempt, or upon proceedings as for contempt to enforce the rights or remedies of any party, shall be deemed a judgment, conviction, or decree, within the meaning of this section; nor shall any attachment or other process issued upon any such order be deemed an execution, within the meaning of this section." I hold, then, if substantial error, prejudicial to the rights and liberty of the petitioner herein, appears upon the record of these proceedings, that the same are reviewable, although contained in the final judgment, declaring him in contempt. Believing, then, that such judgment was entered in violation of law, and that the relator is deprived of his liberty in consequence thereof, I hold that he is entitled to his discharge from this illegal imprisonment. The record in this case contains, in my opinion, other errors especially fatal to the legality of the petitioner's confinement, but it would answer no useful purpose to consider them in connection with this opinion. A labored citation of authorities from states, each having peculiar statutes regulating the procedure of the courts, and the rights of the parties seeking relief from restraint deemed illegal, might show a great deal of legal research, but would throw little or no light upon the case under consideration. I can not close this hastily written opinion more

appropriately than by citing the language of the court of appeals in the state of New York in the historic case of People v. Liscomb, 60 N. Y. 559: "Jurisdiction of the person of the prisoner and of the subject-matter are not alone conclusive, but the jurisdiction of the court to render a particular judgment is a proper subject of inquiry; and while the court can not, upon a return of the writ, go behind the judgment, and inquire into alleged error and irregularities preceding it, the question is presented, and must be determined, whether, upon the whole record, the judgment was warranted by law, and was within the jurisdiction of the court."