## JAMES A. DUPEE & others *vs.* BOSTON WATER POWER COMPANY & others.

A corporation chartered with power to purchase and hold water power created by the erection of dams, and to hold real estate, may, when its water privileges can no longer be profitably used, and when by contract with the Commonwealth it has extinguished its water power, lawfully sell its lands; may receive its own stock in payment therefor; and as an inducement for the purchase may agree to raise the grade of the lands free of expense to the purchaser.

BILL IN EQUITY by James A. Dupee, James Beck and Henry Sayles, shareholders in the corporation known as the Boston Water Power Company, on behalf of themselves and all others the shareholders of the corporation, except the president and directors thereof, who should come in and seek relief by, and contribute to the expense of, the suit, against the Boston Water Power Company, its president and its directors, alleging that the Boston Water Power Company was incorporated June 12, 1824, with authority to purchase and hold any quantity of water power created by the establishment of the dams between Boston and Roxbury, and to make flumes, canals, and raceways ; that the corporation was authorized to purchase real estate and water power not exceeding the value of $300,000 at the time of its purchase, and personal property not exceeding $100,000 ; that the plaintiffs were owners of 1000 shares of the capital stock of the corporation ; that a large majority of the shares of the corporation were held and owned by some two or three individuals ; that the plaintiffs were a minority of the shareholders, and as such had no power or control over the corporation, or in the election of its officers or in the management of its affairs ; that the corporation had been engaged mostly in the purchase and filling up of flats ; that the president and directors had but a small and nominal interest in the corporation ; that the directors proposed to, and had given notice that they would, sell at public auction some 2,000,000 square feet of land belonging to the corporation, consisting of a large number of lots which had been to some extent, but not entirely, filled and graded ; and had given notice in one or more public newspapers that they would, at the election of the

purchaser, receive one half of the amount of the purchase money in the shares of the capital stock of the corporation at $75 per share, which was a sum much exceeding the market value of the shares, thus enabling the two or three principal and large shareholders to sell their stock to the corporation at an advance above the market price, in payment for land belonging to the corporation ; and by means of such sale, if it should take place and the purchasers should elect to pay by surrendering and transferring to the corporation their shares in its capital stock, an improper and illegal reduction of the capital stock of the corporation would be made, and the value of the shares held by the plaintiffs diminished ; that the directors proposed, after the sale should be made, to enter into an agreement with the purchasers, that the land and streets shall be filled up by the company at some indefinite and uncertain time thereafter to a supposed usual grade, free of charge to the purchaser.

The bill then set out the auctioneer's advertisement of the sale, upon terms as to payment as alleged in the bill, and averred that neither the corporation nor its directors had any power, right or authority, under its charter, to sell its land and to receive in payment, in whole or in part, its own capital stock or shares ; that it had no authority to buy its own stock for the purpose of reselling it, and especially that it had no authority to receive or buy its shares at a price fixed above the market value, and that the proposed sale was, under the circumstances, a breach of trust.

The prayer of the bill was for an injunction against the sale and for other relief.

The answer of the Boston Water Power Company admitted that it was incorporated at the time, in the manner and with the powers and authority set forth in the bill and in the act of incorporation there referred to and other acts in amendment thereof and that it still continued its existence and corporate powers under those acts; and that the plaintiffs were the owners of 1000 shares of the capital stock of the corporation, but denied that a large majority of the shares of the corporation were held and owned by two or three individuals ; and alleged that according

to the books of the company its stock was very widely distributed among more than two hundred stockholders. It admitted that the corporation had been largely engaged in the purchase and filling up of flats; but denied that the directors had only a small and nominal interest in the corporation, and alleged that they had a substantial interest in it. It admitted that the directors of the corporation gave notice of a proposed sale of the company's land, in the manner and upon the terms set forth in the plaintiffs' bill, and admitted that the sum and price at which, by the terms of the sale, the shares of the capital stock of the company were to be received in part payment for lands sold, exceeded the then market value of the shares; but alleged that the actual value of its capital stock was based upon the value of its lands remaining unsold, and that by a reasonable valuation of the lands belonging to the corporation, the stock was of the value of $75 a share; and alleged that it had always been the policy of the corporation, since it first began to make public sales of its lands, as shown by repeated votes of its shareholders, to reduce its capital stock in proportion to its sales, by receiving it at its actual and agreed value in part payment for its lands, and that the interests of the stockholders had been greatly benefited thereby; it denied that the surrendering and transferring to the corporation of a portion of the shares of its capital stock, in payment for lands purchased at the proposed sale, in accordance with its advertised terms, would be an improper and illegal reduction of the capital stock; and denied that the shares held by the plaintiffs would be thereby reduced in value. It denied that the directors proposed to enter into the agreement charged in the bill with purchasers at the proposed sale. It admitted that the directors caused to be printed the notice set forth in the plaintiffs' bill; but denied the allegations of the bill that neither the corporation or its directors had the power and right to sell the lands of the corporation and receive in payment, in whole or in part, its own capital stock, or the shares of its stock; and denied that the corporation had not authority, if the stockholders should so direct, to buy its own stock by exchange of land, and to receive it at a fixed price above its market value, so long as that price

was not above its actual value. It alleged that the proposed sale and its terms, as printed in the notice and as set forth in the bill, were authorized by a unanimous vote of the stockholders of the corporation, at its annual meeting held April 29, 1873, and largely attended, the vote being as follows: "Voted, that the directors shall be, and by this vote of the stockholders they are, authorized, if in their judgment the interests of the company will be thereby promoted, to receive, in part payment for the land of the company hereafter to be sold, the stock of the company, at such price for the land and the stock as may be deemed for the interest of the stockholders. A portion of the land shall be sold in single lots when desired by any stockholder." It denied that the proposed sale was or would be a breach of trust, and contrary to equity and good conscience; and denied that it in any way tended to the injury of the plaintiffs.

The answer then alleged that the proposed sale had been abandoned by the corporation and its directors since the filing of the bill, and that they did not intend to receive the company's stock in payment or part payment of any of its lands until the determination of the suit.

The president and directors filed a joint answer substantially like the answer of the corporation. The case was heard by *Ames,* J., and reserved for the consideration of the full court on the bill and the answers.

*C. B. Goodrich,* for the plaintiffs. Selling land of the corporation, and receiving payment of the purchase money in whole or in part, at the election of the purchaser, in the shares of the capital stock of the corporation, is a breach of trust. This is especially true when it is proposed to receive the shares at a sum much above the market value. It operates to the prejudice and injury of such of the shareholders as are unable or unwilling to purchase the land owned by the corporation. It is in effect a dividend, or return of capital to a portion of the stockholders, to the exclusion of others. It effects a reduction of the capital stock of the corporation in a manner not authorized by law. The defendant corporation has no power under its original charter to reduce its capital stock; if it has such power, it is derived from

Sts. 1870, *c.* 224, § 24, and 1871, *c.* 110. The Boston Water Power Company has no authority to reduce its capital stock by a purchase thereof for the purpose of cancellation, or for a resale thereof. A reduction of its capital stock, if allowable in any case, must be by a particular course of proceeding provided by statutes, cited above.

If the St. of 1870, *c.* 224, § 24, is applicable to the defendant corporation, it has not followed the course prescribed. Under this act a reduction of capital must be made at a meeting called for the purpose. The corporation has no authority to make a sale of its unfilled lands, and, as an inducement to the purchasers, enter into a contract with them to fill up, subsequent to the sale, at the expense of the corporation, the lands sold, to some uncertain supposed usual grade. This proposed agreement to fill the land after the sale, is shown by the notice of the proposed sale. The Boston Water Power Company was incorporated for the purpose of creating and maintaining a water power, and not for the purpose of buying and selling flats, or of purchasing land to be resold.

The authority of the corporation to buy land was conferred as an incident, and as the means by which to sustain a water power.

*D. Foster & G. W. Baldwin,* for the defendants.

COLT, J. This case is heard upon bill and answers. No issue is joined upon the truth of the defendants' allegations, and the only questions of law are those which arise upon the facts thus presented.

At an annual meeting of the defendant corporation it was voted that the directors be authorized, " if in their judgment the interest of the company will be thereby promoted, to receive in part payment for the land of the company hereafter to be sold, the stock of the company, at such price for the land and the stock as may be deemed for the interest of the stockholders." Under this authority the directors advertised a number of lots belonging to the corporation to be sold at public auction, and paid for, at the option of the purchaser, one half in cash, and one half in the stock of the corporation at a price named. There is no other action of the corporation or its directors, past or contemplated,

relied on to support the bill. The prayer is that the defendants be enjoined and restrained from selling the company's lands by auction, or otherwise, in the mode proposed.

There is nothing in this vote of the corporation, or in the action of the directors, which amounts to a reduction of capital, or will amount to it, if the proposed sales take place. That must depend on future corporate action. The answer denies that the sale proposed would be an improper and illegal reduction of capital, and the allegation in the bill that the plaintiffs are otherwise advised, as well as the further statement in the answer, that it has always been the policy of the company to reduce its capital in proportion to its sales, becomes immaterial. It is unnecessary, therefore, to consider the question somewhat discussed, whether, under St. 1870, *c.* 224, § 24, this corporation could reduce its capital at any meeting not specially called for that purpose. The only questions left upon the pleadings are, whether sales may be lawfully made of the company lands under the vote of the stockholders, at the annual meeting, to be paid for in its own stock at a price agreed, which price does not exceed its intrinsic value as based upon a reasonable estimate of its corporate property ; and whether the agreement to fill the lots sold to the usual grade can be lawfully entered into.

The corporation was chartered by the St. of 1824, *c.* 26, with power to purchase and hold any quantity of water power created by the establishment of the dams between Roxbury and Boston, to make canals and raceways, erect buildings and fixtures, and to hold real estate not exceeding $300,000 at the time of its purchase, and personal property not exceeding $100,000. There are no limitations upon the amount of its capital stock, but the corporation had the right to make unlimited expenditures in the construction of its works necessary for the appropriation and use of the water power required under its charter, and the power to determine the amount of capital stock required to meet these expenses is left to the corporation itself. Additional acts, subsequently passed, authorize the company to hold additional real estate, but the terms of the original incorporation are not materially changed in other respects.

It is contended that a sale of the lands of the corporation in the mode proposed would be a breach of trust. This depends upon the question whether a sale on such terms is by reasonable implication within the chartered powers of such a corporation. It is not enough that the proposed action may be shown to be prejudicial to the general corporate interests, if it is not illegal, and if it equally affects all the corporators. Regard must be had to the peculiar situation of the property. The increase of population since the original act of incorporation has given greatly increased value to the lands acquired by the company. The business of the company can no longer be profitably confined to the development and use of its. water privileges. It has, by contract with the Commonwealth, the city, and other owners of lands, extinguished its water power, and now owns instead thereof extensive and valuable tracts of lands, over which it had originally only the right to flow. This change in its business has made it necessary to fill in and improve the land that it might be made available as assets of the company, and this necessity has been recognized by a resolve of the legislature authorizing an increase of capital for that purpose. Res. 1856, *c.* 76.

There is nothing in the general laws of the Commonwealth, or in the company's charter, which forbids the sale proposed. The power to purchase and hold implies the power to sell, and to sell upon such terms as to secure the highest price. The whole capital is now represented by these lands, from the sale, and not from the income or use, of which the shareholders must derive their return. In the absence of legislative provision to the contrary, a corporation may hold and sell its own stock, and may receive it in pledge or in payment in the lawful exercise of its corporate powers. *Leland* v. *Hayden*, 102 Mass. 542. *American Railway-Frog Co.* v. *Haven*, 101 Mass. 398. *Nesmith* v. *Washington Bank*, 6 Pick. 324, 329. *Coleman* v. *Columbia Oil Co.* 51 Penn. State, 74. *City Bank of Columbus* v. *Bruce*, 17 N. Y. 507. *Ex parte Holmes*, 5 Cowen, 426.

We cannot see that the rights of any of the stockholders will be illegally prejudiced by the proposed receipt of the shares in payment for its land. Nor is there anything unreasonable in

an agreement of the corporation to fill up lands so sold to the usual grade, made at the time of the sale as an inducement to their purchase, and as one way to make the most profitable dis-· position of its property. The power to make such an agreement is implied in the power to sell. *Bill dismissed with costs.*