ALFRED H. JONES & others vs. JAMES F. BROWN,
administrator, & another.

Suffolk.    December 10, 13, 1897. — May 21, 1898.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Corporation — Construction of Agreement — Specific Performance
— Arbitration — Waiver.*

In 1888, the members of a private trading corporation, of whom one was B., who
owned four tenths of the stock, executed an agreement, article three of which
contained the following: "In the event of B.'s death the remaining stock-
holders, parties to this agreement, shall have the right to purchase from his
estate one half of his stock, within one year from date of his death, and the
remaining within two years from said date, at a price equivalent to par and
proportion of surplus as set forth in the first article of this agreement." By
article five B. agreed that. if the other parties requested, he would at the ex-
piration of one year from the receipt of a notice sell to them one third of his
"entire holdings of stock" at a price equivalent to par, together with its propor-
tion of surplus, and thereafter upon a similar notice, at the expiration of one
year, would sell a further third at a price calculated in a similar manner.   Such
notice was given in 1890 by the other parties to B., who, at the end of the year,
transferred one third of his stock to them.   A similar notice was given in 1891,
but B. procured from one of the parties a waiver of his right to take any of
B.'s stock during 1892, and the project of taking stock for that year was given
up.   Late in 1891, B. gave a notice to the other parties, requiring them to take
all of his stock under article six, which provided that, if he should desire to dis-
pose of his stock, he should first offer it to the other parties at a price equivalent
to par and proportion of surplus, and that, if they should neglect or decline
for a period of six months after such notice to purchase the shares, B. might sell
them to any other persons, or at his option might call upon the other parties to
join with him in winding up the corporation.   They did not take the stock
within six months ; and B., who remained a stockholder, died in 1894.   *Held,*
upon a bill in equity by the other parties against the administrator of B.'s
estate, that they were entitled to specific performance of article three ; and that
the contract applied also to shares obtained by B. after the capital stock was
increased subsequently to the agreement.

The members of a private trading corporation, of whom one was B., executed an
agreement, which provided that "in the event of B.'s death the remaining
stockholders, parties to this agreement, shall have the right to purchase from
his estate one half of his stock, within one year from date of his death, and the
remaining within two years from said date, at a price equivalent to par and
proportion of surplus as set forth in" the agreement.   The agreement also pro-
vided for a submission to arbitration if any controversy or difference of opinion
should arise between the parties or their representatives ; and that "neither
side shall be entitled to maintain an action at law or suit in equity until the
matter in dispute shall have been first referred to and decided by arbitrators."
Within a year after B.'s death the other parties notified the administrator of

his estate of their election to take all the stock, and made a tender, which was refused. The letter containing the tender stated that, "if you differ with us as to whether the amount tendered is in accordance with the contract, you have only to say so; and we stand ready to submit that difference of opinion to arbitration, under the terms of " the agreement. Three months later, they wrote to him, calling his attention to the fact that they had previously expressed their willingness to submit to arbitration; but he made no answer to this. *Held,* that he had waived the right to have the question submitted to arbitration.

BILL IN EQUITY, filed April 2, 1896, against James F. Brown, administrator of the estate of James W. Brown, and the Walker Stetson Sawyer Company, a corporation, to compel the specific performance of a written agreement. Hearing before *Morton,* J., who ordered a decree for the plaintiffs; and the defendant Brown appealed to the full court. The facts appear in the opinion.

*M. Storey,* (*C. H. Sprague* with him), for the defendant Brown.

*G. A. O. Ernst,* for the plaintiffs.

LATHROP, J. The plaintiffs and James W. Brown, the first named defendant's intestate, were members of a private trading corporation, which received its certificate of incorporation on December 20, 1888. It had a capital stock of one hundred thousand dollars, divided into one thousand shares of the par value of one hundred dollars each. Of this stock Brown owned four hundred shares, two of the plaintiffs owned one hundred and fifty shares each, and the other three plaintiffs owned one hundred shares each. On December 31, 1888, the parties entered into an agreement, reciting their ownership of the shares as above stated, and that the parties were desirous "as far as possible of retaining the ownership of said stocks in the hands of those only who may from time to time be actively engaged in the affairs of said company." The agreement contains many articles, among which is the following: "Third. In the event of Mr. Brown's death the remaining stockholders, parties to this agreement, shall have the right to purchase from his estate one half of his stock within one year from date of his death, and the remaining within two years from said date, at a price equivalent to par and proportion of surplus as set forth in the first article of this agreement. Should the remaining parties hereto neglect or decline within the respective periods aforesaid, as set forth in the second and third paragraphs of this agreement, to

purchase said shares, then the representatives of the deceased may thereafter sell the same to any other person or persons, or, at their option, may at any time call upon the parties hereto to join with them in winding up, liquidating, and obtaining a dissolution of said corporation, which the parties hereto bind themselves to do, within six months after written notice to that effect." It is this article of the agreement which the plaintiffs seek to have specifically enforced.

The first article of the agreement is as follows: "Should for any reason the said corporation at any time, by vote of its directors or otherwise, permanently dispense with the services of either of the parties hereto, the person whose services are thus dispensed with hereby binds himself to sell, and the remaining parties hereby agree to buy, within six months from the date of the vote of dismissal, the shares then owned by the retiring parties at a price equivalent to the par value thereof, together with a fair valuation of the proportionate part of any surplus of earnings that may then be in the treasury, and to which said shares might equitably be entitled at the time of the payment for and the transfer of said shares."

The second article of the agreement is as follows: "In the event of the death of either of the parties hereto (other than Mr. Brown) the remaining stockholders, parties to this agreement, shall have the right, at any time within six months from the date of such death, to purchase the stock of the deceased at a price equivalent to the par value thereof, together with his proportion of surplus as set forth in the first article of this agreement."

The principal objection raised to the recovery by the plaintiffs is that on the facts existing at the time when Brown died, on December 6, 1894, the plaintiffs had no right to the transfer of any shares of stock from his estate.

By the fifth article of the agreement, Brown agreed that, if the other parties requested, he would at the expiration of one year from the receipt of a notice sell to them one third of his entire holdings of stock at a price equivalent to par, together with its proportion of surplus, and thereafter, upon a similar notice, at the expiration of one year would sell a further third, at a price calculated in a similar manner. The plaintiffs gave

Brown notice, on January 1, 1890, of their desire to buy one third of his stock in one year from that date. In January, 1891, the evidence shows that two of the plaintiffs, one of them having an assignment from the remaining three, this assignment being written by Brown, received what they supposed to be one third of Brown's holdings, namely, one hundred and twenty shares.

On January 1, 1891, the plaintiffs gave Brown notice of their desire to buy an additional one third of his stock. Brown thereupon procured from one of the plaintiffs a waiver of his right to take any of Brown's stock during the year 1892, and the project of taking stock for that year was given up.

We fail to see that there was any breach of the contract on the part of the plaintiffs. They had an option to take certain shares of stock, which, in 1891, was substantially complied with, and Brown made no objection that it was not fully complied with. The second call for shares of stock, there was evidence tending to show, would have been met by the plaintiffs but for the procuring by Brown of the waiver to take stock by one of the plaintiffs.

On October 23, 1891, Brown gave a notice to the plaintiffs, requiring them to take all of his stock under article six of the agreement. This article provides in substance that, if he should desire to dispose of his stock, he should first offer it to the plaintiffs at a price equivalent to par and proportion of surplus as set forth in the first article of the agreement, the same to be paid for with joint notes, bearing interest, for certain specified amounts. The article concludes thus : " Should the remaining stockholders neglect or decline for a period of six months after such notice to purchase said shares on the terms aforesaid, then said Brown may sell the same to any other party or parties, or at his option may call upon the remaining parties hereto to join with him in winding up, liquidating, and obtaining a dissolution of said corporation, which the parties hereto bind themselves to do, within six months after written notice to that effect."

The plaintiffs did not take the stock within the six months, and hence it is contended that the contract is at an end. But Brown's rights were either to sell to persons not parties to the contract, or to have the corporation wound up. He did neither,

with the exception of selling a few shares to some of the employees, as did some of the plaintiffs. Article nine of the agreement is thus: " After, and as often as, a party hereto has in accordance with this agreement ceased to be a stockholder in said corporation, his rights herein, as well as his obligations, shall cease." Brown remained a stockholder, and acted as such and as an officer of the corporation down to the time of his death. He recognized the agreement as in force both in January, 1892, and in January, 1893, and the finding of the single justice that he waived or abandoned the notice of October, 1891, is fully warranted.

The next question is whether the contract applies only to the shares owned by Brown when the contract was made, or whether it also applies to the shares obtained by Brown after the capital was increased.

The first increase in stock was made in January, 1891, of fifty per cent, and the second in January, 1893, of thirty-three and a third per cent. Neither was in terms a stock dividend, but there can be no doubt that each was in effect a stock dividend, for the dividend declared for the year 1890 was forty-eight per cent, and the dividend for the year 1892 was thirty-five per cent. The agreement does not specifically refer to the possibility of new stock, but it does refer to a possible surplus of earnings, and the rights of the parties to this surplus are recognized. Thus in article one, if the services of any of the parties were dispensed with, he was to sell, and the other parties to buy, the shares " then owned " by him at a price equivalent to the par value thereof, together with a fair valuation of the proportionate part of any surplus of earnings that may then be in the treasury, and to which said shares might equitably be entitled at the time of the payment for and transfer of said shares.

While the word " then " does not appear in the other articles, the subject matter of the agreement is generically the same in all the articles. The phrase " the stock of the deceased," in the second article, naturally means all the stock of the deceased. By the fifth article, Brown agrees to sell " one third of his entire holdings of stock." We see no reason to doubt that the words used in the third clause mean the same as those of the other clauses.

The underlying idea of the agreement is that there was to be a close corporation, and that the ownership of the shares was to be, as far as possible, in the hands of those who might from time to time be actively engaged in the business of the company. As the right to a proportionate part of the surplus was given, by the terms of the contract, to the right to take the stock in the various contingencies provided for, it follows that if this surplus is distributed in stock, or in money which is paid' for new stock, such stock must be within the terms of the contract. See *Atkins* v. *Albree*, 12 Allen, 359; *Billings* v. *Billings*, 110 Mass. 225, 228.

The remaining question relates to the eleventh article of the agreement. This provides for a submission to arbitration if any controversy or difference of opinion should arise between the parties, or any of them, or their respective representatives. It concludes as follows: " Neither side shall be entitled to maintain an action at law or suit in equity until the matter in dispute shall have been first referred to and decided by arbitrators as aforesaid, and then only upon such award as said arbitrators shall make, and the obtaining and decision of such arbitrators on the matter in dispute is hereby declared to be a condition precedent to the right of any party to maintain any such action or suit."

Some efforts appear to have been made by the plaintiffs soon after Brown's death to procure the transfer of the shares of stock in controversy by an amicable adjustment. The administrator of Brown's estate stated in writing, on May 20, 1895, and on November 27, 1895, that the plaintiffs' rights lapsed by reason of their non-compliance with the notice of October 23, 1891. On October 21, 1895, the plaintiffs notified the administrator of their election to take all the stock, and on December 5, 1895, they made a tender in writing, which was refused. On December 20, 1895, the plaintiffs again wrote to the defendants a letter referring to the tender, and adding : " If you differ with us as to whether the amount tendered is in accordance with the contract, you have only to say so ; and we stand ready to submit that ' difference of opinion ' to arbitration, under the terms of clause 11 of the contract of December 31, 1888." So, too, on March 5, 1896, the plaintiffs wrote to the administrator, call-

ing his attention to the fact that they had previously expressed their willingness to submit to arbitration. This letter was delivered personally to the defendant Brown, but no answer was received.

We are of opinion that the question arising on the arbitration clause is disposed of by the cases of *Miles* v. *Schmidt*, 168 Mass. 339, and *Hutchinson* v. *Liverpool & London & Globe Ins. Co.* 153 Mass. 143, 147. The first case decides that an article in an agreement to submit to arbitrators the question whether the agreement has been violated is void. The second case decides that an agreement to submit the amount of damages to arbitration may be waived. The plaintiffs were not bound to submit the question as to what was the construction of the contract to arbitration, nor whether there had been a breach thereof. They offered to submit to arbitration the only question proper for arbitration, and on the evidence it is competent for us to find that the defendant Brown waived the right to have this question submitted to arbitration.

If the plaintiffs are entitled to recover, it is not disputed that the remedy sought in this suit is the proper one, as the stock is not bought or sold in the market. *New England Trust Co.* v. *Abbott*, 162 Mass. 148.                          *Decree affirmed.*