*R. D. Ware,* for the plaintiff.
*S. H. Tyng,* for the defendant.

---

ELIZABETH LINDSAY *vs.* ARLINGTON CO-OPERATIVE ASSOCIATION.

Essex. June 22, 1904. — September 7, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Co-operative Association. Corporation,* By-laws.

A purchase of shares in a co-operative association incorporated under Pub. Sts. c. 106, is in effect a loan upon interest. A shareholder may withdraw his money under the terms of a by-law of the corporation giving him the right of withdrawal on notice, and if the corporation refuses to return the money he can maintain an action for it.

A by-law of a co-operative association incorporated under Pub. Sts. c. 106, contained the following provision: "Any member of this association desiring to withdraw from the association the whole or any part of his or her stock shall make a written application to the directors, and within thirty days from the date of such application the board shall pay or cause to be paid such applicant the amount of shares he may desire to withdraw, but if the board fail to pay or cause the same to be paid within thirty days, said applicant may transfer his or her shares to any other member." *Held*, that by its true construction this by-law required the association to pay to a withdrawing stockholder the par value of his shares, and so construed was valid.

CONTRACT by a stockholder in the Arlington Co-operative Association, against that corporation, for the par value of twenty-eight shares of its stock which the plaintiff had given notice that she desired to withdraw under the terms of a certain by-law of the defendant. Writ in the Police Court in Lawrence, dated October 21, 1903.

On appeal to the Superior Court the case was heard by *Holmes*, J., without a jury, on an agreed statement of facts. He gave judgment for the plaintiff in the sum of $143.36; and the defendant appealed.

By the agreed facts it appeared that the plaintiff was the owner of thirty shares of the capital stock of the defendant of the par value of $5 each, and had on deposit with the defendant the sum of $4.48, which was part payment toward another share of stock under the provisions of the by-laws; that the plaintiff on September 12, 1903, gave the defendant notice in writing that she desired to withdraw all of her stock but two shares, under the provisions of section 1 of article 10 of the by-laws, and that the defendant refused to purchase the twenty-eight shares of stock offered for withdrawal; that the stock of the defendant corporation had no market value, and that the par value of the plaintiff's shares of stock was $150.

The provision of the defendant's by-laws above mentioned under which the action was brought was as follows:

"Article X. Sect. 1. Any member of this association desiring to withdraw from the association the whole or any part of his or her stock shall make a written application to the directors, and within thirty days from the date of such application the board shall pay or cause to be paid such applicant the amount of shares he may desire to withdraw, but if the board fail to pay or cause the same to be paid within thirty days, said applicant may trans-

fer his or her shares to any other member, provided the member has not the full number of shares allowed in the by-laws, but in no case shall he transfer his share to persons not members of the association unless he first obtain consent of the board of directors, which consent shall be signed by the president and clerk and entered on the records of the association. In case a member transfer his share or shares he must surrender his certificate to the board of directors, and the board shall cause a new certificate to.be issued to the person to whom he makes such transfer."

*W. S. Knox & W. Coulson*, for the defendant.

*R. H. Sherman & W. C. Ford*, for the plaintiff.

BARKER, J.   The defendant was incorporated on July 8, 1884, under the provisions of Pub. Sts. c. 106, to carry on the trade of general dealers in household supplies on the co-operative plan. The statute provided that the capital of any such association should not be less than $1,000 nor more than $100,000. Pub. Sts. c. 106, § 9. The amount of the defendant's capital was not fixed by its by-laws, and is not stated in the agreed facts.

There are but scanty statutory provisions regulating co-operative trading associations. The par value of their shares may be $100 or any sum fixed in the articles of association, and may be changed by vote of the stockholders. Pub. Sts. c. 106, § 31. When they increase capital stock the new shares may be sold or issued in such manner as the stockholders may by vote direct, but for not less than par. Pub. Sts. c. 106, § 38. The distribution of profits or earnings is regulated. No stockholder has more than one vote, or can hold more than $1,000 worth of shares at their par value. Until a contingent or sinking fund equal to thirty per cent in excess of the capital stock has accumulated no distribution of profits or earnings shall be made until at least ten per cent of the net profits has been appropriated to such a fund. Pub. Sts. c. 106, §§ 72, 73.

Co-operative associations have long been in use in Massachusetts. One usual feature has been the allowance to stockholders of an annual interest upon the par value of their shares rather than a dividend of profits as such. As the associations are formed for the mutual benefit of persons who, more or less closely, are neighbors, and whose greatest interest in them is

the opportunity to purchase supplies of good quality at a low price or to dispose to advantage of farming products or the like, rather than to have a fixed investment of interest yielding capital, another usual feature has been an arrangement by which any member when it becomes for his interest so to do may withdraw his capital. Such provisions have been brought before this court in cases not unlike the present, and have been held to constitute agreements between the stockholder and the corporation under which the latter has a right to demand back the money he has paid to the corporation, and to maintain an action for it in case the corporation refuses to pay. See *Fuller* v. *Salem & Danvers Loan & Fund Association,* 10 Gray, 94; *Merrill* v. *McIntire,* 13 Gray, 157; *Baxter* v. *McIntire,* 13 Gray, 168; *Delano* v. *Wild,* 6 Allen, 1; *Hartford* v. *Coöperative Mutual Homestead Co.* 128 Mass. 494; *Atwood* v. *Dumas,* 149 Mass. 167.

The power of a corporation to purchase shares in its own capital stock is settled, as also is its power to agree with a stockholder that his shares shall be transferred to the corporation under certain circumstances. *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 152. *Dupee* v. *Boston Water Power Co.* 114 Mass. 37. See *Jones* v. *Brown,* 171 Mass. 318; *Whiton* v. *Batchelder & Lincoln Co.* 179 Mass. 169. Considering that such a course of dealing on the part of co-operative companies and their members with reference to the withdrawal of a member's interest in the capital has been usual from a time earlier than that when their incorporation was provided for by statute, we are of opinion that such arrangements between a co-operative corporation and its members are legal.

We also are of opinion that in the present instance the tenth article of the by-laws, entitled "Withdrawals", should be construed as a positive agreement of the defendant with each of its members, that any member desiring to withdraw from the association the whole or any part of his stock, who makes to the directors a written application to that effect, is entitled to be paid by the association an amount of money equal to the par value of the shares he may desire to withdraw. Such is the clear import of the language of the first part of the article. The subsequent clauses provide for other privileges, but do not indicate that the intention was merely to give to the association

an option to take the shares, and to the member merely a possible means of disposing of them to other members or to persons not members in case the association should not pay the amount of the shares to the member desiring to withdraw them from the association. The ownership of a single share entitles the member to the same dividend on the amount of his purchases of goods, as if he owned the largest permissible number of shares. Upon his shares as such the member is not entitled to dividends, but to interest at a fixed low rate payable quarterly. The shares in effect are advances or loans upon interest, made by the members to the association, subject to call in the manner provided by the article of the by-laws regulating the withdrawal of shares. The system assumes that the undertaking will be prosperous, and so long as it is so there will be little practical difficulty caused by withdrawals. The fact that if the business is conducted at a loss the members who withdraw first may get back their money and others not, is an incident to which each member exposes himself by taking shares, and which the Legislature has not deemed it best to provide against in its statutory regulations.

The defendant cites certain cases from other jurisdictions holding similar by-laws invalid. In *Driscoll* v. *Lewiston Equitable Co-operative Society*, 59 Maine, 474, the by-law purported to give the right only when the assets of the society should be in excess of its liabilities, and the company was insolvent when the notice of withdrawal was given. Besides this there seems to have been a statutory provision that no such corporation was allowed to divide any of its corporate property so as to reduce its stock below its par value until all debts were paid, and then for the purpose of closing its concerns. In *Vercoutere* v. *Golden State Land Co*. 116 Cal. 410, the company was held to have been incorporated under other sections of the code than those contended for by the plaintiff, and it was held that the company was forbidden to withdraw any portion of its capital stock except upon its dissolution, and therefore that the by-laws providing for a surrender of stock on sixty days' notice were invalid.

The view which we take of the construction and validity of the by-law makes it unnecessary to consider the contention that

there could be no damage because the stock had no market value. The agreement was not to buy the stock as a commodity, but to repay to the member desiring to withdraw his shares the amount of such shares at par. The measure of damages for the breach of such an agreement to pay a definite sum of money is the amount due and unpaid with interest from the time that it was payable. See *Fuller* v. *Salem & Danvers Loan & Fund Association, Atwood* v. *Dumas, ubi supra.*

*Judgment for the plaintiff affirmed.*