### In re BRUECK & WILSON CO.

#### (District Court, S. D. New York. June 2, 1919.)

1. CORPORATIONS ⬅➡376—REPURCHASE OF STOCK—NOTES FOR PRICE.

Under the law of New York, where a stockholder in a New York corporation sold his stock to the company, and took its notes, though they were valid when issued, he did so at his peril, and assumed the risk of consummation of the transaction if at maturity of any of the notes, there was no surplus possessed by the company, so that payment of any note would encroach upon the funds which belonged to the company in trust for payment of creditors.

2. BANKRUPTCY ⬅➡340—CLAIMS—PURCHASE OF STOCK—SUFFICIENCY OF EVIDENCE.

Evidence *held* to show that the bankrupt company had issued the notes on which claim was filed by the holder in some manner in connection with a sale to it of his stock by the holder's brother-in-law.

3. BILLS AND NOTES ⬅➡339—HOLDER IN DUE COURSE—DUTY TO MAKE INQUIRY—NOTES GIVEN FOR STOCK.

The brother-in-law of a stockholder in a company, in taking from the stockholder, in payment of an antecedent debt, notes issued by the company to the stockholder in repurchasing his stock, could not close his eyes as to whether the notes were issued on the purchase of the company's stock, but was under the affirmative duty, in order to protect himself against the New York rule that a company can purchase its stock only with surplus profits, to make inquiry.

In Bankruptcy. In the matter of the Brueck & Wilson Company, a bankrupt. On review of referee's order expunging the claim of one Rothenberg. Order sustained.

Frederick W. Sperling, of New York City, for claimant.

Zalkin & Cohen, of New York City (Moses Cohen, of New York City, of counsel), for trustee.

MAYER, District Judge. The referee has ordered that Rothenberg's claim should be expunged, and this order is here on review. The testimony fully warrants the following conclusions:

(1) That the bankrupt corporation, while solvent and having a surplus sufficient to authorize the transaction, bought from one Blum

his stock in the corporation, for which it issued its 12 promissory notes, each dated October 11, 1915, each for $625, with 5 per cent. per annum interest from January 1, 1916, the first note to be due April 1, 1916, and the remaining notes quarterly thereafter until April 1, 1918, when the last note was to become due.

(2) That the first note was duly paid, but that bankruptcy prevented the payment of the remaining 11 notes.

(3) That Blum delivered all the notes to his brother-in-law, Rothenberg, in consideration of the extinguishment of a valid antecedent debt owing to Rothenberg from Blum, and that Rothenberg did not know the precise details of the transaction whereby the corporation bought its stock from Blum, and made and delivered its notes to Blum in payment therefor.

There is no question in the case of lack of good faith or honest dealing. The sole question is whether, on the facts, it follows as matter of law that Rothenberg was bound to inquire into the circumstances under which the notes were issued, and thus gain knowledge of the fact that the notes were issued by the corporation to purchase its own stock, and consequently take the notes from Blum, with all the chances which Blum ventured when he took these notes.

[1] Under the law of New York the notes were valid when issued, but Blum sold the stock and received the notes at his peril, and assumed "the risk of the consummation of the transaction" if at maturity of any of the notes there was no surplus, and thus that payment of any note would encroach "upon the funds which belong to the corporation in trust for the payment of its creditors." In re Fechheimer-Fishel Co., 212 Fed. 357, 129 C. C. A. 33; In re Tichenor-Grand Co. (D. C.) 203 Fed. 720; Grasselli Chemical Co. v. Ætna Explosives Co: (Horney Claim) 258 Fed. 66. What happened is perfectly clear and entirely natural, and the kind of transaction readily engaged in by men who probably did not know that the law placed limitations on notes of this character.

Rothenberg in 1908 had loaned Blum some of the money which enabled Rothenberg to buy stock in the corporation. In 1915 "the circumstances" under which the Blum-Rothenberg transaction took place are thus related by Rothenberg:

"Mr. Blum had some misunderstanding with Mr. Brueck, and he told me he was going to get out of that firm, and I tried to persuade him to remain in. My business is down South, you know, I am really in Mississippi, and I am not here all the time and when I was gone he got out of that firm, and when I got back in New York here later he had made a settlement with these people, and he asked me if I would not take what he owed me for these notes; that he was going to work for another firm, he was working for William Myer, and he wanted to start free, and he asked me if I would take those notes; and I thought Brueck & Wilson is a good concern, but he wanted me to do it, and I did it. * * *

"Q. And you knew that he had received those in settlement of his interest in the firm? A. I did not know; I cannot say that. If I did, I would tell you so. I tell you what I thought: He owed Sam Wilson and Fred Brueck a lot of money, and Sam Wilson and Fred Brueck owned all of Brueck & Wilson, and I thought he made some settlement with them. I never gave it a thought. * * *

"Q. You knew he sold his stock in the firm when he got out? A. Yes.

"Q. And he got out of the firm? A. Yes.

"Q. Did not you know that he received these notes in payment of his stock? A. No; I did not.

"Q. What did you think he received the notes for, if not for his stock? A. I never gave it a thought, but I naturally thought Sam Wilson and Fred Brueck bought his stock, and they were Brueck & Wilson Company, and I thought they gave him the notes, because the whole thing belonged to Fred Brueck and Sam Wilson at the time. I did not pay any attention to it. I thought there was only the three of them. * * *

"Q. You knew he owned capital stock in that corporation? A. I knew he owned capital stock in the corporation.

"Q. And when you received those notes from him, you knew that he had gotten out of the corporation and disposed of his capital stock in it? A. Yes; I knew he got out of the corporation."

[2] From the foregoing and other testimony to the same effect, and from the fact that the notes were signed by the corporation and were long-term notes, the inference was plain that the corporation had issued its notes in some manner in connection with the sale to it by Blum of his stock. The slightest inquiry of Blum would have disclosed the fact that the notes were issued for stock. In such circumstances, Rothenberg could have decided whether or not to take the notes and extinguish the antecedent debt.

The protection of the New York and similar statutes, reinforced by the decisions of the courts, is based on the proposition that the capital of the corporation is a trust fund for the benefit of its creditors, which cannot be depleted by the corporation by the purchase of its own stock. So important a safeguard should not be removed, nor impaired, where the circumstances are such as at once to excite inquiry by a man of ordinary business prudence. Surely, if Rothenberg had contemplated buying the notes for cash, he would have inquired as to the circumstances of their origin, and no less measure of inquiry should be expected where the consideration is the payment of an antecedent debt.

[3] As matter of law, then, the facts are such that Rothenberg cannot be regarded as an innocent purchaser. If, looking only at his testimony, the inference was not clear that the notes were for the purchase of the corporation's stock, he could not, in any event, close his eyes, but it was his affirmative duty, in order to protect himself (if he so desired), to make inquiry. Not being an innocent purchaser, he took the notes with all the risk which inhered in them as against Blum.

The order of the referee is sustained.