KEITH v. KILMER.*

In re NATIONAL PIANO CO.

(Circuit Court of Appeals, First Circuit. November 15, 1919. On Petition for Rehearing, January 6, 1920.)

No. 1406.

1. BANKRUPTCY ⟨⟩318(1)—CLAIM UNDER EXECUTORY CONTRACT BY CORPORATION FOR PURCHASE OF ITS OWN STOCK.

An executory contract by a corporation for the purchase of its own stock cannot be made the basis of a claim against its estate in bankruptcy, thus permitting the selling stockholder to share with ordinary creditors in its assets.

On Petition for Rehearing.

2. MATTER NOT DECIDED.

The record raises no issue and this court intimates no opinion as to the power of the corporation organized under the laws of any state to contract to purchase its own stock, paying therefor only out of surplus or accumulated profits.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

In the matter of National Piano Company, bankrupt. Charles H. Keith, trustee, appeals from an order allowing claim of Frederick M. Kilmer. Reversed.

Lee M. Friedman, of Boston, Mass. (Percy A. Atherton and Friedman & Atherton, all of Boston, Mass., on the brief), for appellant.

Samuel D. Elmore, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal by the trustee in bankruptcy of the National Piano Company, a Maine corporation, from an order of the District Court reversing the referee and allowing the claim of Kilmer in the sum of $31,800. Kilmer's claim is based upon the breach of an alleged contract dated February 3, 1913, between him and the corporation, for the purchase from him at par of 318 shares of the bankrupt's capital stock in installments of 3 shares a month, beginning on July 1, 1916. The corporation was adjudicated a bankrupt in June, 1916.

For present purposes we assume, without deciding, that the court below was correct in finding the contract was sufficiently authorized or ratified, or both, by the directors and stockholders, although in passing it may be noted that a minority of the stockholders appear to have had no knowledge of the transaction, and therefore, if unanimous assent was requisite (Von Arnim v. Amer. Tube Works, 188 Mass. 515, 518, 74 N. E. 680), the corporation might not be bound; that question we pass. In like fashion, we assume that the court below was right in finding that at the time of the transaction the corporation was solvent, and the contract not tainted by fraud in fact—an intent to cheat creditors, existing or prospective.

But it is entirely clear that the transaction out of which the alleged contract grew was entered into, not for the benefit of the corporation itself, but for the benefit of certain stockholders. In brief, junior and minority stockholders desired to buy out the senior and majority stockholders; and, having no money with which to buy, the parties agreed, not for the benefit of the corporation, but for the benefit of the trading stockholders, to have the corporation, in form at any rate, agree to buy and pay for a large part of the stock intended thus to pass ultimately from the seniors to the juniors, thus giving them control of the corporation and its offices, with the emoluments thereof. The corporation was, so to speak, made an accommodation purchaser for the benefit of certain vending and purchasing stockholders. Over $32,000 was thus paid by the bankrupt to, or for the benefit of, its trading stockholders, before bankruptcy—the natural result of such unbusiness-like and unlawful methods—overtook the concern. Kilmer now seeks to prove a similar claim for $31,800 more. The question presented, then, is whether, by executory contract between a Maine corporation and one of its stockholders, such stockholder may be transmuted from a stockholder into a creditor, and as such be permitted to share in the assets, pari passu with merchandise and other ordinary creditors, proving claims in bankruptcy. No authority is cited which on analysis sustains this proposition.

[1] Under the laws of many states corporations may not purchase their own capital stock under any circumstances. See cases cited in 1 Machen, Corps, § 627, note 6; Thompson, Corps (White's Supp.) § 4076. This is not the rule in Massachusetts as to Massachusetts corporations. But there is no case in Massachusetts which sustains the proposition which underlies the present claim—that a stockholder, contracting with the corporation, not for its own benefit, but for the benefit of himself and other stockholders, with whom he is dealing, may, through an executory contract, cease to be a stockholder, and become a creditor, to share in competition with other creditors in the assets of the corporation when bankrupt.

Dupee v. Boston Water Power Co., 114 Mass. 37, generally cited as the leading case in support of the proposition that a corporation may buy its own stock, was a bill in equity by minority stockholders to prevent the defendant company from selling land, taking one-half the pay in the stock of the corporation at $75 a share, alleged to be much more than the market value of the stock. The case was heard on the bill and answer. The court, by Colt, J., said:

"There is nothing in the general laws of the commonwealth, or in the company's charter, which forbids the sale proposed. The power to purchase and hold implies the power to sell, and to sell upon such terms as to secure the highest price. The whole capital is now represented by these lands, from the sale, and not from the income or use, of which the shareholders must derive their return. In the absence of legislative provision to the contrary, a corporation may hold and sell its own stock, and may receive it in pledge or in payment in the lawful exercise of its corporate powers. Leland v. Hayden, 102 Mass. 542; American Railway-Frog Co. v. Haven, 101 Mass. 398 [3 Am. Rep. 377]; Nesmith v. Washington Bank, 6 Pick. 324, 329."

The doctrine that the power exists, because there is no "legislative provision to the contrary," does not accord with the usual rule as to

construing corporate charters. Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950; Morawetz, Corps. (2d Ed.) § 316.

Leland v. Hayden, 102 Mass. 542, was a bill for instructions by trustees under a will as to the disposition of stock purchased out of accumulated profits and then distributed to its stockholders as a dividend. No question of the rights of creditors of the corporation arose. The court said, by Chapman, C. J., as to the course of the railroad company in investing surplus profits in the purchase of its own stock:

"This they might legally do, taking the transfer to a trustee, instead of investing the money in the stocks of some other company, or lending it, in order that it might be earning some income until they should be ready to divide or otherwise dispose of it."

This was said obiter, when the mind of the court was fixed upon the proper disposition of a trust estate. The relation of the stockholders to creditors of the corporation was not before the court.

In American, etc., Co. v. Haven, 101 Mass. 398, 3 Am. Rep. 377, the question was whether stock which had been transferred to a trustee for the benefit of the corporation continued to have voting rights. The court held that it did not. Here, again, there was no question of the conflicting rights of creditors and stockholders.

New England Trust Co. v. Abbott, 162 Mass. 148, 38 N. E. 432, 27 L. R. A. 271, was a bill brought by the plaintiff trust company to compel the executors of a deceased stockholder to turn in the decedent's stock for purchase by the company pursuant to provisions in the bylaws. No rights of creditors, existing or prospective, were considered by the court. The gist of the case was whether such provision, intended to keep the corporation a close corporation, could, as between the corporation and its stockholders, be made legally effective. The court held that it could.

Leonard v. Draper, 187 Mass. 536, 73 N. E. 644, was a suit upon a promissory note given by a street railway company in payment of the purchase price of shares of its capital stock. No rights of creditors of the corporation were involved; the court overruled the objection that a Massachusetts street railway company could not legally purchase its own stock.

None of these cases presented the question of the effect of such contracts upon the rights of either existing or future creditors. Compare Lindsay v. Arlington Co-op. Assoc., 186 Mass. 371, 71 N. E. 797; Jones v. Brown, 171 Mass. 318, 50 N. E. 648; Whiton v. Batchelder & Lincoln Corp., 179 Mass. 169, 60 N. E. 483; Von Arnim v. Am. Tube Works, 188 Mass. 520, 74 N. E. 680; Haywood v. Leeson, 176 Mass. 310, 57 N. E. 656, 49 L. R. A. 725; Old Dom. Cop. Co. v. Bigelow, 188 Mass. 315, 74 N. E. 653, 108 Am. St. Rep. 479.

Obviously, if a corporation may make an executory contract with its stockholders for the purchase of their stock at par, the statutory provisions as to the reduction of capital stock are, so far as the rights of future creditors are concerned, of no validity. If, as the decision of the District Court necessarily imports, contracts between a corporation and its stockholders for the purchase of their capital stock are to be held valid, pari passu, with contracts for merchandise and other deal-

ings in the usual and ordinary course of its business, the theory that capital stock is a trust fund for creditors is rejected. Compare Morawetz, Corps. (2d Ed.) §§ 111, 112, 113; Machen, Corp. §§ 626–634; 1 Cook on Corps. (7th Ed.) §§ 309, 311, and cases cited and reviewed.

Such a doctrine also controverts, by necessary implication, the decisions in which unpaid assessments are held assets reachable by or in behalf of creditors. Compare Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, and cases cited. Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; 10 Cyc. 653.

The language of Lord Herschell in Trevor v. Whitworth, L. R. 12 App. Cases, 409, 414, is most pertinent:

"The result of the judgment in the court below is certainly somewhat startling. The creditors of the company which is being wound up, who have a right to look to the paid-up capital as the fund out of which their debts are to be discharged, find coming into competition with them persons who, in respect only of their having been, and having ceased to be, shareholders in the company, claim that the company shall pay to them a part of that capital. The memorandum of association, it is admitted, does not authorize the purchase by the company of its own shares. It states, as the objects for which the company is established, the acquiring certain manufacturing businesses and the undertaking and carrying on the business so acquired, and any other business and transaction which the company consider to be in any way auxiliary thereto, or proper to be carried on in connection therewith."

In this case the House of Lords considered carefully this question, disapproved of the reasoning, if not the decision, of certain earlier cases which looked in the same direction as the Massachusetts cases, and settled the law of England in favor of the proposition that stockholders cannot thus be transmuted into creditors, to share in bankruptcy or winding-up proceedings with outsiders, who have presumably trusted the corporation on the faith of its being what it appeared to be and what the law required it to be.

In Handley v. Stutz, 139 U. S. 417, 427, 11 Sup. Ct. 530, 534 (35 L. Ed. 227), the court, by Mr. Justice Brown, said:

"Ever since the case of Sawyer v. Hoag, 17 Wall. 610 [21 L. Ed. 731], it has been the settled doctrine of this court that the capital stock of an insolvent corporation is a trust fund for the payment of its debts; that the law implies a promise by the original subscribers of stock who did not pay for it in money or other property to pay for the same when called upon by creditors; and that a contract between themselves and the corporation, that the stock shall be treated as fully paid and nonassessable, or otherwise limiting their liability therefor, is void as against creditors. The decisions of this court upon this subject have been frequent and uniform, and no relaxation of the general principle has been admitted. Upton v. Tribilcock, 91 U. S. 45 [23 L. Ed. 203]; Sanger v. Upton, 91 U. S. 56 [23 L. Ed. 220]; Webster v. Upton, 91 U. S. 65 [23 L. Ed. 384]; Chubb v. Upton, 95 U. S. 665 [24 L. Ed. 523]; Pullman v. Upton, 96 U. S. 328 [24 L. Ed. 818]; County of Morgan v. Allen, 103 U. S. 498 [26 L. Ed. 498]; Hawkins v. Glenn, 131 U. S. 319 [9 Sup. Ct. 739, 33 L. Ed. 184]; Graham v. Railroad Co., 102 U. S. 148, 161 [26 L. Ed. 106]; Richardson v. Green, 134 U. S. 30 [10 Sup. Ct. 280, 33 L. Ed. 516]."

In Sawyer v. Hoag, supra, the court, by Mr. Justice Miller, stated the principle as follows:

"Though it be a doctrine of modern date, we think it now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund for the benefit of the general creditors of the corporation. And

when we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen."

In Upton v. Tribilcock, 91 U. S. 45, 47 (23 L. Ed. 203), Mr. Justice Hunt said:

"The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Its violation will not be undertaken by any just-minded man, and will not be permitted by the courts. The idea that the capital of a corporation is a football to be thrown into the market for the purposes of speculation, that its value may be elevated or depressed to advance the interests of its managers, is a modern and wicked invention. Equally unsound is the opinion that the obligation of a subscriber to pay his subscription may be released or surrendered to him by the trustees of the company. This has been often attempted, but never successfully. The capital paid in, and promised to be paid in, is a fund which the trustees cannot squander or give away. They are bound to call in what is unpaid, and carefully to husband it when received."

The question of allowing claims in bankruptcy grounded on such contracts came before the Court of Appeals for the Second Circuit in the case of In re Fechheimer Fishel Co., 212 Fed. 357, 129 C. C. A. 33. The court there, by Rogers, Circuit Judge, cited and discussed some of the chief authorities, and reached the conclusion that the note of a New York corporation, given in payment of its own stock, though given in good faith and at a time when the company was solvent, was unenforceable as against creditors if the corporation was insolvent at the time of maturity; holding that, in effect, such note is but a promise to pay out of surplus profits if such payment can be made without prejudice to creditors. Judge Rogers says:

"If, at the time the stockholder receives payment for his stock, the payment prejudices the creditors, payment cannot be enforced. If a stockholder sells his stock to a corporation which issued it, he sells at his peril, and assumes the risk of the consummation of the transaction without encroachment upon the funds which belong to the corporation in trust for the payment of its creditors.

"The right of the creditors of the corporation cannot be defeated by the fact that at the time the transaction was entered into the seller of the stock and the officers of the company who purchased it were acting in good faith and supposed that the company was solvent.

"The Supreme Court of Illinois in Commercial National Bank v. Burch, 141 Ill. 519, 31 N. E. 420, 33 Am. St. Rep. 331, said:

"'Purchase of its own stock by a corporation by the exchange of its property of equal value, though made in good faith and without any element of fraud,' or 'anything in the apparent condition of the' corporation 'to interfere with the making of the exchange, will not be allowed where it injuriously affects a creditor of the' corporation, 'even though the fact of the indebtedness was not at the time established or known to the stockholders. * * * The capital stock of' a corporation 'is a fund set apart for the payment of its debts, and the directors * * * hold it in trust for that purpose. * * * The shareholders of the corporation are conclusively charged with notice of the trust character which attaches to its capital stock. As to it they cannot occupy the status of innocent purchasers,' and, when 'they have in their hands

261 F.—47

any of the trust fund, they hold it cum onere, subject to all equities which attach to it.'

"In Clapp v. Peterson, 104 Ill. 26 (1882), the same court, after stating that the shareholders of a corporation are conclusively charged with notice of the trust character which attaches to its capital stock and that when they have any of this trust fund in their hands they hold it cum onere, subject to all the equities which attach to it, went on to say:

"'It is objected, against the principles above stated, that the cases in which they were declared were where there was actual or constructive fraud or unfairness, where the corporations were insolvent, or in process of being wound up. The question naturally would arise mostly in such circumstances, but the principles enunciated are general in scope, following from the nature of the capital stock of corporations, and the relation of a stockholder to the corporation, and we know of no limitation of their application as above suggested.'

"In this statement we fully concur. There can be no such limitation of the principle.

"The Supreme Court of Connecticut, in Crandall v. Lincoln, 52 Conn. 73, 52 Am. Rep. 560 (1884), said:

"'If the view we have taken of the character and nature of this stock is sound,' that it is a trust fund for the security of creditors, 'and we have no doubt that it is, the conclusion inevitably follows that under no circumstances can a stockholder sell his stock to the company and take therefor his portion of the capital stock to the prejudice of creditors. The illegality of the transaction does not at all depend upon the actual knowledge or mala fides of the seller; if he in fact sells to the company and receives in return a part of the capital, the policy of the law requires him to know it, and conclusively charges him with knowledge. Thus selling, he sells at his peril. In no other way can the rights of creditors be protected. The seller can protect himself by selling to other parties, or he may hold his stock, taking, as he is bound to, the risk of his investment. The creditor is not bound to assume any part of the stockholder's risk, and he has no way of protecting himself. The law is his only protection.'

"The above cases were not based on any local statute, but upon general principles.

"In saying that the assets of a corporation constitute a trust fund, we are to be understood as referring to the assets of an insolvent corporation. A solvent corporation, of course, holds its property as any individual holds his. But when a corporation becomes insolvent, a trust arises in respect to the administration of its assets for the benefit of its creditors. Hollins v. Brierfield, etc., Co., 150 U. S. 371, 381, 383, 14 Sup. Ct. 127, 37 L. Ed. 1113 (1893); McDonald v. Williams, 174 U. S. 397, 401, 19 Sup. Ct. 743, 43 L. Ed. 1022 (1899). Hence, when a corporation buys its own stock, payment cannot be made with funds which upon insolvency belong to its creditors, instead of to its stockholders. Cook on Corporations (7th Ed.) vol. 1, § 9, pp. 42, 43."

See, also, In re Tichenor-Grand Co. (D. C.) 203 Fed. 720, where Hand, D. J., dealt with a similar question arising as to a New York corporation.

In Grasselli Chemical Co. v. Ætna Explosives Co. (D. C.) 258 Fed. 66, Mayer, D. J., reached the same result, to wit, that a note of a New York corporation given in payment of stock is enforceable only as against a surplus; that it cannot be let into competition with creditors.

In re Brueck & Wilson Co. (D. C.) 258 Fed. 69, is another recent decision by Judge Mayer to the same effect.

Olmstead v. Vance, etc., Co., 196 Ill. 236, 63 N. E. 634, is another well-considered case, in which the same result is reached. It was there held that an agreement by a corporation to buy its own stock cannot be enforced to the injury of creditors—such an agreement being the

equivalent of a contract to diminish its capital; that the stockholders of a corporation are charged with notice that the capital stock is a trust fund for the payment of debts, and hold their stock subject to all the equities which attach. The court said:

"This court has repeatedly held that, as against the claims of creditors, it is immaterial what private arrangements subscribers may make with the corporation, and that any device by which members of the corporation seek to avoid the liability imposed upon them by law is void as to creditors, whether binding or not as between themselves and the corporation. Clapp v. Peterson, 104 Ill. 26; Alling v. Wenzel, 133 Ill. 264 [24 N. E. 551]; Coleman v. Howe, 154 Ill. 458 [39 N. E. 725, 45 Am. St Rep. 133]. If such an arrangement as that made between the Smith & Jones Company and Bentley & Olmstead could be enforced, a corporation might then, at the time of its organization, make such a contract with each of its stockholders as to totally destroy the capital stock of the concern and deprive the creditors of all security from this trust fund. The capital stock is a trust fund furnished for the benefit of the creditors of the corporation, and equity will not permit it to be destroyed or impaired to their injury for the benefit of stockholders. The creditors of this corporation had a right to rely upon the application of the capital stock toward the payment of their claims, and to permit this plaintiff in error to cancel his stock upon this inequitable agreement, and to receive a premium of ten per cent. in addition, would be in violent disregard of a long line of decisions of this court."

Other authorities sustaining the same general doctrine are: Crandall v. Lincoln, 52 Conn. 73, 52 Am. Rep. 560, citing and reviewing many of the earlier cases; Cartwright v. Dickinson, 88 Tenn. 476, 12 S. W. 1030, 7 L. R. A. 706, 17 Am. St. Rep. 910; White Mountains R. R. v. Eastman, 34 N. H. 124, 140; Thompson's Corporations, White's Supplement (2d Ed.) §§ 4075 and 4076.

Mr. Morawetz, in his book on Corporations, says (volume 1, § 112):

"No verbiage can disguise the fact that a purchase by a corporation of shares in itself really amounts to a reduction of the company's assets, and that the shares purchased do in fact remain extinguished, at least until the reissue has taken place. The fact that such a transaction may not necessarily be injurious to any person is not a sufficient reason for supporting it. It is contrary to the fundamental agreement of the shareholders, and is condemned by the plainest dictates of sound policy. To allow the directors to exercise such a power would be a frightful source of unfairness, mismanagement, and corruption. It is for these reasons that a shareholder cannot be allowed to withdraw from a corporation, with his proportionate amount of capital, either by a release and cancellation before the shares have been paid up, or by a purchase of the shares with the company's funds."

Machen (volume 1, § 628) states the rule as follows:

"In America, many courts uphold the same sound and wholesome doctrine as the English cases. But it must be conceded that a somewhat larger number of the American courts have taken the view that a corporation may without express statutory authority purchase its own shares, provided the purchase is entered into bona fide and does not endanger the claims of creditors. It should be observed that the American cases which agree with the English doctrine are often well considered and fully reasoned, whereas those which uphold the contrary view generally lack any extended examination of the subject."

The court below apparently assumed that the bankrupt was a Massachusetts corporation. In fact it is a Maine corporation. While there is no decision by the Maine Supreme Court dealing flatly with the pow-

er of a Maine corporation to purchase under any circumstances shares of its own capital stock, the decision in the case of In re Brockway Mfg. Co., 89 Me. 121, 35 Atl. 1012, 56 Am. St. Rep. 401, accords with the doctrine of the Supreme Court of the United States and with the decisions above cited in the Circuit Court of Appeals and the District Courts, to the effect that such a claim cannot be sustained as against the rights of creditors, existing or subsequent.

In this case the treasurer of the corporation had used its funds to pay for the stock of the corporation purchased by him and other stockholders. It was held that the treasurer was responsible for the whole amount of the money so used, so far as necessary to satisfy the claims of creditors, even though all the stockholders had assented to the purchase. The court, by Peters, C. J., said (89 Me. 125, 35 Atl. 1013, 56 Am. St. Rep. 401):

"Whatever rule might obtain, if this were a proceeding to enforce the liabilities of a stockholder under our statutes, we think that the case discloses in its facts a diversion of its property and assets to the detriment of creditors. The case is very like that of a trustee secretly applying the trust property to his own use. To hold otherwise would be a contradiction of the plain proposition that the stock and property of every corporation is to be regarded as a trust fund for the payment of its debts, and that its creditors have a lien thereon and the right to priority of payment over any stockholder. The payment of the amount claimed by Haskell for the benefit of the corporation amounted in law to an application of that sum in reduction of his indebtedness to the company, and therefore a reduction of its assets to that extent. It is well settled by numerous authorities that the stockholders of a corporation have no rights until all other creditors are satisfied. They have the full benefit of the profits made by the establishment, but cannot take any portion of the funds until all other claims on them are extinguished. Their rights are not to the capital stock, but to the residuum after all demands on it are paid. Wood v. Dummer, 3 Mason, 311 [Fed. Cas. No. 17,944]; Sanger v. Upton, 91 U. S. 60 [23 L. Ed. 220]. Creditors may hold the company's agents liable for wasting assets which are needed to satisfy their claims, on the ground that it constitutes a misapplication of trust funds."

The Maine corporation statutes expressly authorize their corporations to deal in the shares of "any other corporation." This express inclusion of power to deal in the shares of other corporations certainly implies a lack of power to deal in its own shares. Compare Morawetz, Corps. (2d Ed.) § 316. At any rate, there is nothing in the Maine decisions holding that a Maine corporation can, by process of contract with its stockholders, reduce a fund to which its creditors, existing or prospective, are entitled to look for the payment of their debts. If such contracts can be sustained, the statutory provisions as to the reduction of capital stock are waste paper.

Even in Wisconsin, where the trust fund doctrine as to capital stock is not entertained, a transaction such as this at bar is regarded as constructively fraudulent. Atlanta, etc., Association v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 13 Am. St. Rep. 42.

A fortiori, under the decisions of the Supreme Court of the United States, holding the capital stock to be a trust fund for the benefit of creditors, it cannot be allowed to be dissipated by executory contracts between the corporation and its stockholders, not disclosed in the public records of the corporation, or even in its own books of account.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to enter an order disallowing the claim, and the appellant recovers his costs of appeal.

## On Petition for Rehearing.

PER CURIAM. The appellee has filed a petition for rehearing, accompanied by a long brief, arguing many questions not arising on this record, and therefore not touched upon by the court in the opinion. This petition points out no error of fact or of law; it must be denied. But, to avoid possible confusion, it may be desirable to add a few words as to what is not decided by this court in this case.

[2] This record raises no issue, and this court intimates no opinion, as to the power of a corporation organized under the laws of the state of Maine, or of any other state, to contract to purchase its own stock, paying therefor only out of surplus or accumulated profits. Compare In re O'Gara & Maguire, Inc., 259 Fed. 935; Jesson v. Noyes, 245 Fed. 46, 50. The only question presented in this case, and decided by this court, is as to whether a stockholder may prove damages for a breach of such contract, accruing after bankruptcy, against general assets, and in competition with ordinary creditors. That question we answer in the negative. As to any other questions concerning contracts by corporations for the purchase of their own stock, arising under different conditions, no opinion is intimated.

Petition denied.